## Albert R. Foster v. Mathew Wiley and another.

*Attorney and client: Liability: Trespass: Execution: Implied authority.* A client who puts his case against another into the hands of an attorney for suit is presumed to authorize and sanction such action as the latter, in his superior knowledge of the law, may decide to be legal, proper and necessary in the prosecution of the demand; and whatever adverse proceedings the attorney may take are to be considered, so far as they affect the defendant in the suit, as approved in advance by the client, and therefore as his act, even though they prove to be unwarranted by the law; as to trespasses upon third parties the rule is different.

A client is held liable in this case in trespass for the taking of plaintiff's property upon an execution issued by a justice of the peace at the instance of the attorney, after an appeal had been perfected.

The limits to the implied authority of an attorney in ordinary cases of suits brought to enforce money demands pointed out and authorities cited.

*Statute construed: Sheriffs: Constables: Process.* Under our statute (*Comp. L. 1871*, § 563), expressly empowering sheriffs to serve any process which consta-

bles may execute, no special direction for the purpose is necessary; and a deputy sheriff is not liable in trespass on the ground of want of authority to act, for levying a justice's execution addressed to any constable, etc.

*Officer: Execution: Appeal: Notice.*   An officer does not render himself liable in trespass for proceeding in good faith to serve a justice's execution after he has been told by the defendant that an appeal has been taken, where the justice insisted that the appeal had not been perfected; he has a ʈright to rely upon his process until he is officially notified of its having been superseded.

*Heard May 1.    Decided May 6.*

Error to Allegan Circuit.

*Hawes & Edson*, for plaintiff in error.

*Severens, Potter & Boudeman*, for defendants in error.

COOLEY, J.

Foster sued Wiley and Montieth in trespass for taking from his possession a certain carriage.  The defendants justified under an execution issued on a judgment against Foster in favor of Wiley, by virtue of which a levy was made on the carriage by Montieth, as deputy sheriff.  The judgment was rendered by a justice of the peace, and it was not disputed that that, as well as the execution issued upon it, was in due form of law.  Foster claimed, however, that he had appealed the judgment to the circuit court before execution was issued, and consequently that there was no authority for issuing the same.  He also claimed that if the execution had been lawfully issued, Montieth would have had no authority to execute it, because it was directed to any constable of the county, and not to the sheriff.

The facts regarding the appeal appear to have been, that the proper papers for the same were prepared and served upon the justice, and all costs paid, except the fee of one dollar for making return.  The justice treating the appeal as ineffectual because of the non-payment of this fee, refused to make return, and issued execution when he was requested to do so.  The circuit court afterwards, on appli-

cation of Foster, ordered the justice to make return, but not until after the carriage had been taken and sold on execution.

The record requires us to assume for the purposes of this case that the appeal was properly taken and perfected, and that the issue of the execution was unwarranted; and upon this basis we are to discuss the responsibility of these defendants. Wiley is supposed to be responsible, either because, as plaintiff in the execution, he may be presumed to have directed its issue, or because the evidence tends to show that he had knowledge of its being taken out, and of the subsequent proceedings, and having interposed no objection, must be assumed to have approved and adopted them. The grounds upon which Montieth is thought to be liable are different, as we shall see hereafter.

It is not claimed that Wiley personally directed the issue of execution, but it is conceded that it was ordered out by one Stoughton, an attorney, into whose hands for collection Wiley had placed the demand upon which judgment had been recovered. And one question would seem to be whether, where one places a demand in the hands of an attorney for collection, he is to be held as approving and adopting whatever is done by the attorney in respect to the demand for the ostensible purpose of collecting it, not only until judgment is obtained, but afterwards.

It is sometimes said that the authority of an attorney ceases with recovery of judgment; but this is not so for all purposes. He is in general presumed to have authority to cause execution to be issued, and to receive the money in payment thereon;—*Langdon v. Potter, 13 Mass., 320; Commissioners v. Rose, 1 Desaus., 469; Gray v. Wass, 1 Greenl., 257; Brackett v. Norton, 4 Conn., 517; Silvis v. Ely, 3 W. & S., 420;* but he cannot bind the plaintiff by accepting less than the full amount;—*Vail v. Jackson, 15 Vt., 314; Jackson v. Bartlett, 8 Johns., 362; Brackett v. Norton, 4 Conn., 517; Nolan v. Jackson, 16 Ill., 272; Lewis v. Gamage, 1 Pick., 347;* or by bidding in property

in the name of the plaintiff at a sale under the execution;— *Beardsley v. Root, 11 Johns., 464; Huston v. Mitchell, 14 S. & R., 307;* or by a discharge of the defendant from arrest upon the execution without satisfaction;—*Kellogg v. Gilbert, 10 Johns., 220; Simonton v. Barrell, 21 Wend., 362;* see *Keller v. Scott, 2 S. & M., 81;* and the weight of authority seems to be against the right of the attorney to compromise the demand without special instructions;—*Lewis v. Gamage, 1 Pick., 347; Holker v. Parker, 7 Cranch, 436; Penniman v. Patchin, 5 Vt., 352; Carter v. Talcott, 10 Vt., 471; Simonton v. Barrell, 21 Wend., 362.* These cases sufficiently indicate the limits to the implied authority of an attorney in ordinary cases where suit is brought to enforce money demands.

The question in the present case, however, is different from that which might arise in a case where by law an execution might lawfully be issued. Assuming that the suit had been appealed, it is insisted that, whatever implication there may be in other cases, of authority in the attorney to order out an execution, there could be none in a case where by law no execution could issue, and where, consequently, it could not be assumed that the plaintiff himself would order one. The act of the attorney in such a case being a naked tort, it is insisted that no presumption of his client's agency can be indulged in, and he alone must be held responsible for the trespass which followed, unless affirmative evidence is given that the client was consenting to his action.

The cases relied upon in support of this position are not very directly in point. They may be said to settle the principle that a party on whose behalf an execution is issued is not liable for irregular action of the officer under it, or for a trespass committed by the officer upon the property of a third person, unless it is made to appear that such irregular action or such trespass was directed or assented to by him.—*Freeman v. Rasher, 13 Q. B., 780; Averill v. Williams, 1 Denio, 501; Same v. Same, 4 Denio,*

*295.; Ferguson v. Terry, 1 B. Monr., 96 ; West v. Shock-ley, 4 Harr., 287.* This is on the principle that in suing out an execution he must be assumed to have intended a lawful exercise of authority by the officer, and not unlawful action.

On the other hand, in *Barker v. Braham and Norwood, 3 Wils., 368,* where an attorney had taken out a *ca. sa.* against an administratrix without any suggestion that she had been guilty of a *devastavit,* and consequently without authority of law, both attorney and client were held liable for the trespass, and no question was made of the client's responsibility, though there is no suggestion in the report that he personally participated in the proceedings, and the contrary is inferable. In *Bates v. Pilling, 6 B. & C., 38,* attorney and client were held jointly liable in trespass for the issue and service of an execution by the attorney's agent after the demand had been paid, though neither of them directed or knew of its issue. In *Crook v. Wright, R. & M., 278,* it was held by Abbott, Ch. J., that where a trespass " was committed in the service upon the defendant therein of an execution sued out by an attorney, it is nec-essary in order to make the plaintiffs in the execution lia-ble, that it be shown the attorney was retained in the cause; but when that was shown, the plaintiffs were made trespassers by the act of their attorney." The case is not very fully reported, and it does not distinctly appear on what ground the action under the execution was held illegal; but the inference is that it was because irregularly issued; and the responsibility of the plaintiffs for their attorney's action is clearly affirmed. All these cases are referred to by Cowen, J., in *Newberry v. Lee, 3 Hill, 525,* where it was decided that proving a levy on an execution sued out by the defendant's attorney, and purporting to be issued on a judgment in the defendant's favor, sufficiently connects the defendant with it; and if the attorney is liable to the defendant in execution in trespass, the client is liable also.

There is a plain difference between a trespass committed on a third party in assumed execution of process, and one committed on the defendant under process sued out irregularly. A plaintiff can never be held to intend a trespass to third persons; but when one puts his case against another into the hands of an attorney for suit, it is a reasonable presumption that the authority he intends to confer upon the attorney includes such action as the latter, in his superior knowledge of the law, may decide to be legal, proper and necessary in the prosecution of the demand, and consequently whatever adverse proceedings may be taken by the attorney are to be considered, so far as they affect the defendant in the suit, as approved by the client in advance, and therefore as his act, even though they prove to be unwarranted by the law. Such seems to be the result of the authorities. It follows that the circuit court erred in holding Wiley not liable.

The case of the officer is next to be considered. It is claimed, *first*, that he is liable because the process was not addressed to him, and therefore he had no authority to serve it. But the statute expressly empowers sheriffs to serve the process which constables may execute;—*Comp. L. 1871*, § *568;* and it does not require that there should be any special direction for the purpose; *second*, it is claimed that he is liable because he was notified the case had been appealed, and if he proceeded afterwards it was at his peril. The notification consisted in his being told by the defendant in the execution that an appeal had been taken. Upon this it may be observed that the justice whose duty it was to refrain from issuing an execution where an appeal had been perfected, denied the fact, and whether he or the defendant in the execution was in the right, was a question which depended upon facts that the officer had no facilities and no authority for trying and determining. If the officer having the execution could in any such case be compelled to inquire into and draw the correct legal conclusions from the facts

which are alleged to invalidate his process, he would not only be constantly and very unjustly exposed to peril for the acts and defaults of others, but unscrupulous persons would not fail to find many ingenious methods of suggesting doubts and difficulties to careful officers, which would result in staying indefinitely in some cases the execution of legal process. The law does not require the officer to take notice of such suggestions. He has a right to rely upon his process until he is officially notified of its having been superseded. No error was therefore committed in holding the officer not liable.

Something was said on the argument about the carriage having been èxempt from execution; but by the record nothing is made to turn upon that.

The judgment must be affirmed, with costs, as to Montieth, and reversed, with costs, and a new trial ordered, as to Wiley.

The other Justices concurred.