## HOWELL, JEWETT & CO., Respondents, v. CARYL & CO., Appellants.

### Kansas City Court of Appeals, May 30, and June 13, 1892.

1. **Kansas**: COMMON LAW: MORTGAGE: STATUTE: EVIDENCE. In Kansas by statute the common law, as modified by the constitution and statutory law, is in force in aid of the general statutes of the state, and, at common law, a valid mortgage of personalty may be made without writing. In Kansas the certificate of the register of deeds proves merely the reception and filing of the instrument, and not its execution and registration, so as to entitle it to be received in evidence.

2. **Evidence**: SWORN COPY OF INSTRUMENT. Where an instrument is in the lawful custody of an officer, and there is no authority for its withdrawal, a sworn copy thereof would be primary evidence upon proof of its execution and registration.

3. **Trespass**: PLEDGE: POSSESSION: MORTGAGE. Whether there was a mortgage, or whether it was properly admissible in evidence, is immaterial, where, upon the undisputed facts, the plaintiff in trespass *de bonis asportatis* was rightfully in possession of the property as a security which had been pledged to him for his debt, and the title thus acquired is sufficient to support the action.

4. ———: PLAINTIFF IN EXECUTION. In placing an execution in an officer's hands the plaintiff therein is only presumed to intend lawful action thereunder, which presumption, however, may be rebutted, and it may be shown he is a co-trespasser with the officer, as he is when he directs an abuse of the writ.

5. ———: ATTORNEY AND CLIENT: EXECUTION. When defendant puts his note in the hands of an attorney for collection, he thereby confers upon him the authority to take such action as he may decide is necessary, and, if the attorney direct a wrongful levy, defendant must be held as having approved the same, and is, therefore, liable therefor.

6. ———: DAMAGES: MITIGATION: RETURN OF PROPERTY. Where there is a wilful taking of property or an injury to or deterioration in value, the defendant in trespass cannot compel the plaintiff to accept the

Howell, Jewett & Co. v. Caryl & Co.

property even in mitigation of damages, while evidence that the defendant has relinquished his claim, or never removed or converted the property, is admissible in mitigation, if, on refusal to accept, the goods are preserved for the use of plaintiff in continued readiness to restore them.

7. **Practice Appellate:** INSTRUCTIONS: CONTRADICTORY: DAMAGES. Through an instruction as to mitigation of damages is contradictory and erroneous, it will not work a reversal where there is no evidence of mitigation.

8. **Trespass:** VOID EXECUTION. If an execution is void, it affords no protection to the officer or the plaintiff therein who directs its levy or ratifies the same,—both are *prima facie* trespassers *ab initio*.

ON MOTION FOR REHEARING.

9. **Pleading:** ADMISSION. An answer that alleges that "after the execution of the said mortgage," etc., admits the execution of the mortgage.

10. **Trespass:** ADMISSIONS IN PLEADING: PROOF: MITIGATION. Where the pleadings admit the goods were levied on by the officer on execution in favor of defendant and were released and tendered to plaintiff and refused, it is impliedly admitted that the goods were taken out of plaintiff's possession, and he is only required to show their value; and in such case it is immaterial whether plaintiff's possession was the possession of pledgee or mortgagee, and the offer to return is not a justification, nor even a mitigation, unless the property is preserved for the plaintiff's use after his refusal to accept.

11. ———: ATTORNEY AND CLIENT. Although an attorney have no special authority from his client to direct the levy of an execution, yet as to third parties he has an implied authority; nor does the fact that he is employed by such third parties in another suit incapacitate him from binding his client to such parties; where it appears his acts were without their connivance or instigation.

*Appeal from the Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

AFFIRMED.

*Lathrop, Morrow & Fox,* for appellants.

(1) The court erred in admitting in evidence the copy of the chattel mortgage from Lund to plaintiffs, for the reason that it was not certified according to act

of congress, nor was it "a record or an exemplification of an office book," within the meaning of section 4844, Revised Statutes, 1889; nor was any foundation laid for the introduction of secondary evidence. R. S. 1889, sec. 4844; *State v. Pagels*, 92 Mo. 300. The court limited the effect of the copy to the date and fact of filing. But the copy has no indorsement on it showing the fact and date of filing, and, hence, it was not admissible for any purpose. *Simpson v. Smith*, 27 Kan. 565. (2) It is settled law that when a plaintiff places a writ in the hands of an officer without any specific directions to levy upon any particular piece of property the officer must act at his peril, and the plaintiff is not liable if the officer levies on the property of a stranger. Freeman on Executions, sec. 273, and cases cited; Mechem on Public Officers, sec. 904, and cases cited; Mechem on Agency, sec. 839, and cases cited; *West v. Shockley*, 4 Harr. 287; *Averill v. Williams*, 1 Denio, 501; *Coe v. Higdon*, 1 Disney, 393; *Hopkins v. Smith*, 7 J. J. M. 263; *Lothrop v. Arnold*, 25 Me. 136; *Hyde v. Cooper*, 26 Vt. 552; *Adams v. Freeman*, 9 Johns. 117; *Fitler v. Fossard*, 7 Pa. St. 540. (3) Our contention is that, conceding for the sake of argument, that defendant and the constable were guilty of an actual technical conversion, yet the plaintiffs were bound to accept a tender back of the goods, if they were in the same condition as when levied on. While a tender back would not justify the original act of conversion, or go in bar of the action, yet it should be considered by the jury in mitigation of damages, to the extent of the value of the goods. *Gilbert & Miller v. Peck*, 43 Mo. App. 578; *Ward v. Moffett*, 38 Mo. App. 395; *Kreher v. Mason*, 20 Mo. App. 29; *Bigelow Co. v. Heintz*, 21 A. 109; *Worman v. Kramer*, 73 Pa. St. 378; *Delano v. Curtis*, 7 Allen, 470; *Kaley v. Shed*, 10 Metc. 317; *Pickering v. Trustee,*

7 T. R. 53; *Plevin v. Henshall*, 10 Bing. 24; *Haywood v. Seawood*, 1 Moore & S. 459; *Irish v. Clayes*, 8 Vt. 30; *Railroad v. Bank*, 32 Vt. 639; *Thayer v. Manley*, 8 Hun, 550; *Rogers v. Crombie*, 4 Greenl. (Me.) 247. (4) Tested by the laws of Missouri, the so-called execution is void upon its face, and is a nullity; nothing more than so much blank paper. By two decisions of our supreme court the so-called execution was void. *Stevens v. Chouteau*, 11 Mo. 382; *Estes v. Long*, 71 Mo. 608. A void execution is no protection to the officer. *Campbell v. Sherman*, 35 Wis. 103; *Rosen v. Fishel*, 44 Conn. 271; *Mitchell v. Foster*, 11 Ad. & El. 472; Cooley on Torts, 464. (5) The court declared in its instruction, numbered 5, given at request of plaintiffs, that as a matter of law the defendant Caryl was bound by the act of Russell, if he directed the constable to levy upon the property in controversy. There is, of course, no pretense, that Russell had any express authority so to do; the contention being that the relation of the parties gave Russell the implied power to levy upon a stranger's property. There are many respectable authorities which hold that an attorney has no power, by virtue of that relation, to direct the constable to levy on the property of a stranger so as to make his client responsible. Mechem on Agents, sec. 820, and authorities cited; *Averill v. Williams*, 5 Denio (N. Y.) 295; *Welsh v. Cochran*, 63 N. Y. 185; *Oesterich v. Gilbert*, 9 Hun (N. Y.) 244; *Bank v. Evans*, 10 Smed. & M. 58; *Doe v. Ingersoll*, 11 Smed. & M. 273; *Bank v. Gavan*, 10 Smed. & M. 344; *Dunn v. Newman*, 7 How. (Miss.) 582; *Macbeth v. Ellis*, 4 Bing. 578; *Butler v. Knight*, L. R. 2 Exch. 109, 113; *Hillegass v. Bender*, 78 Ind. 225. However this may be, we submit the law is that an attorney cannot so make his client responsible, unless the attorney acts in the very best good faith. When there is a suggestion of fraud or

double dealing, connected with the attorney's act, then the binding effect of his act becomes a question of fact, depending upon his good faith. Wharton on Evidence, sec. 1184; Stevens on Evidence, art. 17; *Wilson v. Spring*, 64 Ill. 18; *Smith v. Milliken*, 2 Minn. 319; Wharton on Agency, sec. 585; *Black v. Rogers*, 75 Mo. 431, 448; *Hall v. Callahan*, 66 Mo. 316, 325; *State v. Lewis*, 9 Mo. App. 321, 324; s. c., 74 Mo. 222. (6) Defendant Caryl is not bound by the actions of E. S. Fish, who procured the judgment and executions, and who went with the constable at the time he undertook to make a levy. Mr. Russell could not delegate his powers. *Atrobus v. Sherman*, 65 Ia. 230; *Dickson v. Wright*, 52 Miss. 585; s. c., 24 Am. Rep. 677; *Danley v. Crowl*, 28 Ark. 95; *Smalley v. Green*, 52 Iowa, 241; *Kellogg v. Norris*, 10 Ark. 18; *Young v. Crawford*, 23 Mo. App. 432.

*Smith & Solomon* and *L. F. Bird*, for respondents.

(1) Whatever view might formerly have obtained of the implied authority of an attorney to control the collection of the judgment of his client under systems of jurisprudence where a distinction exists between attorneys and barristers, and under which attorneys were employed to obtain judgments, and, thereafter, sheriffs were employed to collect them, it cannot obtain under our methods of practice where an attorney is not employed in any case for the mere purpose of obtaining a judgment, but is employed, as every practitioner knows, for the purpose of getting the money on the claim of his client, which includes the securing of the claim, or obtaining judgment thereon, and afterwards obtaining the fruit of that judgment. *Foster v. Wiley*, 27 Mich. 244; *Jarmain v. Hooper*, 6 Man. & G. 827, 849; *Oesterich v. Gilbert*, 9 Hun, 242; *Kirksey v. Jones*,

7 Ala. 623, 628; *Poucher v. Blanchard*, 86 N. Y. 256; *Guillaume v. Rowe*, 94 N. Y. 271; *Levi v. Abbott*, 4 Ex. 590; Mechem on Agency, sec. 820; Freeman on Executions, sec. 273; *Canifax v. Chapman*, 7 Mo. 175; *Dameron v. Williams*, 7 Mo. 141; *Dowell v. Taylor*, 2 Mo. App. 329, 334; *Davis v. Hall*, 90 Mo. 659, 665; *Vaughn v. Fisher*, 32 Mo. App. 29, 37; Bliss on Code Pleading, sec. 83; *Simpson v. Rice*, 43 Kan. 23; *Dolan v. Van Demark*, 35 Kan. 307; *Ryan v. Tudor*, 31 Kan. 366. (2) As to the effect of tender to return lumber: Sutherland on Damages, p. 230, etc.; *Kerr v. Mount*, 28 N. Y. 558, 665, 666; *Vosburg v. Welch*, 11 Johns. 175; *Hanmer v. Wilsey*, 17 Wend. 91; *Lion v. Yates*, 52 Barb. 244; *Livermore v. Northrup*, 44 N. Y. 107; *Reynolds v. Shuler*, 5 Cow. 323, 326; *Kerr v. Mount*, 28 N. Y. 658, 666; *Norman v. Rogers*, 29 Ark. 365, 369; Freeman on Executions, sec. 272, p. 879, notes 3, 4, 5; *Dolan v. Van Demark*, 35 Kan. 305; *Swiggett v. Dodson*, 38 Kan. 706; *Ohio v. Hinchman*, 27 Pa. St. 479, 483; *Paine v. Ins. Co.*, 11 R. I. 411; *Rae v. Hulbert*, 17 Ill. 572, 577; *Baxley v. Linah*, 16 Pa. St. 241; Freeman on Judgments, sec. 571; 1 Greenleaf on Evidence, sec. 5, p. 7, note *b*; *Sparks v. Purdy*, 11 Mo. 219, 223; *Kreher v. Mason*, 20 Mo. App. 32, 33; *Gilbert v. Peck*, 43 Mo. App. 584; *Stix v. Keith*, 85 Ala. 465; *Crumb v. Oaks*, 38 Vt. 566; *Macklem v. Durrant*, 32 Up. Can. Q. B. 98; *Pickering v. Trustee*, 7 T. R. 53; s. c., Durnf. & E. 53; *Hall v. Aitkin*, 25 Neb. 360; Comp. L. Neb., sec. 14, ch. 32; *Carr v. Jackson*, 28 Mo. 316; *Wilson v. Jackson*, 10 Mo. 336; *Mills v. Duryee*, 7 Cranch. 481; *State v. Williamson*, 57 Mo. 199; *Dodge v. Coffin*, 15 Kan. 277; *Ward v. Baker*, 16 Kan. 31; *Comstock v. Adams*, 23 Kan. 525; *Parsons v. Lloyd*, 3 Wil. 341, 345; *Turner v. Felgate*, 1 Lev. 95; *Gunz v. Heffner*, 33 Minn. 215; *Snydacker v. Brosse*, 51 Ill. 361; *Foster v. Wiley*, 27 Mich. 244;

s. c., 15 Am. Rep. 185; *Britton v. Cole*, 1 Ld. Raym. 305, 309; Mechem on Agency, sec. 839, I.; *Kerr v. Mount*, 28 N. Y. 659, 664; *Chapman v. Dyett*, 11 Wend. 31; *Lyon v. Yates*, 52 Barb. 237; *Smith v. Shaw*, 12 John. 257; *Coddington v. Lloyd*, 8 Ad. & L. 449; *Thomas v. Hinsdale*, 78 Ill. 259. And the same rule applies to executions. *Snydacker v. Brosse*, 51 Ill. 361; *Brown v. Feeter*, 7 Wend. 301; *Chapman v. Dyett*, 11 Wend. 31.

SMITH, P. J.—This is an action of trespass *de bonis asportatis*.

It appears from the evidence that one Martin Lund was a dealer in lumber and building material at Burlingame, Osage county, Kansas, and was indebted to the plaintiffs and Caryl & Co. (a firm composed of defendant and Barker), who were wholesale lumber dealers respectively at Chicago and Kansas City. It appears further that Lund was indebted to the former in the sum of $1,800, and to the latter in the sum of $158.95, evidenced by a promissory note. The undisputed evidence was that the plaintiffs were put in possession by Lund of his entire stock of lumber and builders' material for the purpose of securing them in the indebtedness of the latter to the former. While the plaintiffs were so in possession, Caryl & Co. sent their note to Mr. Russell, an attorney at Burlingame, for collection. In the letter of transmissal Caryl & Co. use this expression: "Please inform us if there is not some way by which the balance can be collected, and that at once by attachment or otherwise?" It does not appear that Russell made answer to the interrogatory thus propounded to him. It seems that Russell was representing the plaintiffs in respect to some questions that had arisen in litigation under their claim to the Lund stock of lumber. It further appears that

Mr. Russell placed the note of Caryl & Co. in the hands of another attorney, Mr. Fish, and requested him to see Lund, get him to confess judgment before a justice of the peace, then to issue execution thereon and have the same levied on the lumber so in possession of plaintiffs. It appears Fish complied with Mr. Russell's request. The execution was issued and placed in the hands of a constable, who levied the same according to the directions of Mr. Fish. The lumber so levied on was removed by the constable to another place, and there piled up; while it was thus in the constable's possession Mr. Russell directed him to release it from the levy, which was done. Mr. Russell offered to return the lumber to plaintiffs with reasonable damages for the taking and detention, but the plaintiffs refused to receive it, saying it had depreciated in value, and was not in the same condition it was when taken by the constable. It appears the lumber was taken and sold under other executions so that it was lost to both plaintiffs and Caryl & Co.

It does not appear that Caryl & Co. were aware of the action of Mr. Russell in the matter, until the plaintiffs brought this action against them to recover the value of the lumber which the constable took from them. The plaintiffs had judgment, and the defendant Caryl has appealed.

I. The first ground upon which the defendant challenges the judgment is that the trial court erred in its action in admitting in evidence the copy of the mortgage for the reason that instrument was not certified according to the act of congress, nor was it a record or exemplification of an office book within the meaning of section 4844, Revised Statutes, nor was there any foundation laid for the introduction of secondary evidence. The certificate of the register of deeds of Osage county, in the state of Kansas, declared

"that the said instrument was a true copy and transcript of the original chattel mortgage as the same appears of record in my office." Under the statute of the state of Kansas, which was in evidence, every mortgage of personal property which shall not be accompanied by an immediate delivery and followed by actual and continued possession shall be absolutely void as against the vendees of the mortgagor, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds in the county where the property shall be situate. Upon the receipt of any such instrument the register shall indorse on the back thereof the time of receiving it, and shall file the same in his office to be kept for the inspection of all persons interested. A copy of any such original instrument or any copy thereof so filed and certified by the register shall be received in evidence but only of the fact that such instrument was received and filed according to the indorsements of the register therein, and of no other fact. Compiled Laws of Kansas, art. 2, ch. 68, secs. 9, 10, 13.

Now it is obvious enough that the certificate of the register of deeds proves no more than that the instrument was received and filed by him according to his indorsement thereon. This certificate does not prove the execution of the instrument, and this did not entitle it to be received in evidence, even in Kansas. A mortgage, to be valid, is not required to be acknowledged under the laws of that state. Nor is it required, as in this state, to be recorded before it is valid and binding. As neither a mortgage nor a copy thereof is required in that state to be recorded in order to obtain validity, it is quite difficult to understand how a copy of such an unrecorded instrument can be regarded as "a record or exemplification of the office books kept in any public office" of our sister state of Kansas, within

the meaning of section 4844 of our statute already referred to. *State v. Pagels*, 92 Mo. 300. It is not pretended that the instrument is authenticated in conformity to the laws of the United States in relation to the authentication of public acts, records and judicial proceedings The instrument was in the lawful custody of the register of deeds of the proper county. There seems to be no statutory authority for its withdrawal for any purpose. Under such circumstances, it seems very strange that, upon proof of the execution and registration of the instrument, a sworn copy thereof would not be primary evidence. *Karr v. Jackson*, 28 Mo. 316. Our attention has been called to no adjudication in the state of Kansas to that effect, and, perhaps, there is none such. But, however all this may be, it is undeniably true that at common law a valid mortgage of personalty may be made without writing. *Hughes v. Menefee*, 29 Mo. App. 192. By statute, the common law, as modified by the constitutional and statutory law, is in force in aid of the general statutes of the state of Kansas. Comp. Laws of Kansas, ch. 119, sec. 3. If the evidence does not show a valid mortgage, either at common law or under the statute, it does show a valid common-law pledge. *Roeder Bros. v. Brewing Co.*, 33 Mo. App. 49; *Conrad v. Fisher*, 37 Mo. App. 352. The plaintiffs were placed in possession of the property by Lund, to secure their debt. This is not questioned. Neither Lund nor any other creditor of his had a right to the possession of the property, as against plaintiffs, until their debt was satisfied. *Roeder v. Brewing Co.*, 33 Mo. App. 69; *Altgear v. Walsh*, 24 Mo. App. 134. So it is of no consequence whether the mortgage was properly admissible in evidence or not, since, upon the undisputed facts, the plaintiffs were rightfully in possession of the property as a security which had been

pledged to them by Lund for their debt, and the title thus acquired was sufficient to support this action. *Dolan v. Van Demark*, 35 Kan. 305; *Swiggett v. Dodson*, 38 Kan. 706; *Ryan v. Leed*, 31 Kan. 336.

II. The appealing defendants further contend that the trial court erred in giving an instruction for plaintiffs which, in effect, told the jury that if Caryl & Co. caused an execution to issue on their judgment against Lund and placed it in the hands of the constable, and that the same was levied on lumber described in the chattel mortgage, which was in possession of plaintiffs against the objections of plaintiffs, and that the constable took the lumber from the possession of plaintiffs and removed the same, then Caryl & Co. were liable to plaintiffs for the value of the lumber. When a plaintiff places an execution in the hands of an officer for service, he is presumed to intend that no action shall be taken thereunder not authorized by the terms of the writ. The officer may seize the property of a stranger or do any other unauthorized act without creating any liability against the plaintiff, because the plaintiff is not presumed to have directed or ratified the illegal transaction. But this presumption may be rebutted. The injured party may show the plaintiff was a co-trespasser with the officer, and may make both responsible for the abuse of the writ. So, where the plaintiff advises or directs it to be made, he is a co-trespasser with the officer. *Perrin v. Claflin*, 11 Mo. 13; *Canifax v. Chapman & Wells*, 7 Mo. 176; *Page v. Freeman*, 19 Mo. 422; Freeman on Executions, sec. 273; Mechem on Public Officers, sec. 904; Mechem on Agency, sec. 839.

In *Dameron v. Williams*, 7 Mo. 139, it was declared that if a constable, acting under authority of plaintiff's execution, sold property which had been previously conveyed by defendant to one Williams to secure a debt, without any communication with the execution

plaintiff, he, Williams, might notwithstanding, have maintained his action on the case against the execution plaintiff; for the constable sold the property for the benefit of the latter, and at his implied request. But the ruling in the last-named case is not in harmony with that announced in *Canifax v. Chapman & Wells*, *supra*, and the rule stated in the latter case is the one generally adopted by the courts and text-writers, and which we feel it our duty to follow. The evidence shows that Russell, who was the attorney of Caryl & Co., directed Fish to cause the levy of the executions. But if the acts of Fish were without authority, if Russell could not delegate his authority to Fish, still, after Fish had caused the property to be seized and removed by the constable, the former adopted the acts of Fish; for Russell immediately thereafter wrote to Smith, the attorney for plaintiffs, that he had levied on all the mortgaged property; that as "the mortgage was no good" he would fight it. There can, therefore, be no question but that Russell, the attorney for Caryl & Co., advised and directed the levy or, at least, did that which was equivalent to it. *Perrin v. Claflin, supra.*

The only question then is whether Caryl & Co. are responsible for the acts of their attorney in advising and directing the trespass. *Vaughn v. Fisher*, 32 Mo. App. 29, was where the sheriff had wrongfully levied a writ of attachment upon certain property, and, after the levy had been made, the attorney for the attaching plaintiff moved the court issuing the writ for an order to sell the attached property. It was contended in a suit by the owner of the property so wrongfully seized and sold under the attachment against the attaching plaintiff, that the plaintiff was not liable for the reason the trespass was committed by others, and that there was no evidence of ratification of their acts by him. It was said by the judge who delivered the opinion in the

case: "No special direction by defendant to his attorney was necessary to make the defendant liable for the attorney's act in procuring the order of sale. Under his general employment the attorney, in procuring the order of sale, was acting as the authorized agent of the defendant, and bound defendant. Had the defendant's attorney directed the sheriff to levy on the property the defendant would have been bound by the direction as if he had given it in person. In making the motion for the sale of the property the defendant's attorney was acting strictly within the limits of his authority as such attorney."

So, it was declared in *Davis v. Hall*, 90 Mo. 659, 665, that "the authority of an attorney in virtue of his employment extends to the conduct and management of the cause in which he is engaged, in and out of the court; and he may do all things incidental to the prosecution of the suit. and which affect the remedy only, and not the cause of action." In *Guillaume v. Rowe*, 94 N. Y., it was said that a party is bound by the acts of his attorney, although he does not give immediate direction as to the proceedings in an action, or is not with him at its successive stages. In *Poucher v. Blanchard*, 86 N. Y. 256, it was said that the law which regulates the relation between attorney and client is that of agency, and it is elementary law that the principal is bound by the acts of his agent performed within the scope of his authority, and he is thus not only bound by the contracts of his agent, but is responsible for his negligence and wrongful acts. In *Foster v. Wiley*, 27 Mich. 244, it was declared by Mr. Justice COOLEY, who delivered the opinion in the case, to be the result of all the authorities, that when one puts his case against another in the hands of an attorney for suit, it is a reasonable presumption that the authority he intends to confer upon the attorney includes such action as the

latter in his superior knowledge of the law may decide to be legal, proper and necessary, in the prosecution of the demand, and consequently whatever adverse proceedings may be taken by the attorney, are to be considered so far as they affect the defendant in the suit as approved by the client in advance, and, therefore, as his act even though they prove to be unwarranted by the law.

According to the principles announced in the foregoing authorities it would seem that when Caryl & Co. put their note against Lund in the hands of Russell, their attorney, for collection by suit, that they thereby conferred upon him the authority to take such action as he should decide necessary in the prosecution of their demand, and, therefore, if the latter directed a wrongful levy on the mortgaged property or ratified such wrongful levy after made, then the former must be held as having approved the same, and are, therefore, liable for the wrong complained of. And whether the words of the letter from Caryl & Co. to Russell already quoted were those of inquiry or direction cannot alter the case, since it is not disputed that Russell was engaged by Caryl & Co. to collect the note. He was the agent of Caryl & Co., and, if while acting in the furtherance of their interest he directed or subsequently approved the commission of the wrong for which this action is brought, they are liable to the plaintiffs therefor. We do not, therefore, think the trial court erred in giving the instruction in this paragraph referred to.

III. The further ground of appeal is urged that the trial court erred in giving plaintiffs' instruction, numbered 1, which told the jury if the defendants offered to give possession of the goods seized under their execution against Lund, and that the goods were then in as good condition as when seized, the jury

should consider that tender in mitigation of damages; but such tender will not prevent plaintiffs from recovering the value of the goods, with interest, from the date of their seizure, if you find that at the date of such seizure plaintiffs were in the exclusive possession of said goods under their chattel mortgage. If you find for plaintiffs you will allow them only for such property embraced in the mortgage as was seized by the constable under the execution in favor of defendants against Lund.

The undisputed evidence shows that the constable levied the execution of Caryl & Co. on two parcels of lumber, one which was on what is termed the Lund lot and the other the Playford lot. The value of the two parcels was $1,400. That on the Playford lot was of the value of $900, and that on the Lund lot was of the value of $500. The lumber on the Playford lot was taken by the constable against the will of plaintiffs and by the employment of force and removed to the Lund lot where it was roughly piled up and mixed. That which was on the Lund lot when the levy was made remained *in statu quo*. The attorney of Caryl & Co. directed a release of the levy, and then offered to restore all the lumber, which plaintiffs refused to accept.

The rule of law in such cases is that if there be a wilful taking of the property, or the property suffered any injury or deterioration in value, the defendant cannot compel the plaintiff to accept the property even in mitigation of damages. *Ward v. Moffett*, 38 Mo. App. 395. And evidence that the defendant has relinquished all claim to the property, that he never removed it from the place where it originally was, and never, in point of fact, converted it to his own use, has been held admissible in mitigation of damages, *Delano v. Curtis*, 7 Allen (Mass.) 471. According to these rules, the seizure and removal of the lumber which was on

the Playford lot was of such a character as to relieve the plaintiffs of any obligation to accept it when Caryl & Co. offered to return it. And, on the other hand, if Caryl & Co., after the seizure, release and offer to return the lumber on the Lund lot, had kept or preserved the same for the plaintiffs' use, then such offer back, with continued readiness to restore, would have, under the rule announced in *Ward v. Moffett*, 38 Mo. App. 395, constituted a proper matter in mitigation of damages. But, under the facts which the evidence tends to prove, there was no case which would justify the court in giving an instruction in respect to the mitigation of damages. It was the duty of Caryl & Co., after the offer to return the property and its non-acceptance, to preserve the same so that they could be continuously ready to restore it, and failing in this, as was the case, there were no grounds of mitigation for the jury to consider. The instruction is palpably erroneous. It is contradictory. It tells the jury that, if they found certain facts, they should consider the same in mitigation of the damages, and, in the same connection, it further tells them that such mitigating facts must not prevent plaintiffs from recovering for the value of the goods seized, with interest from the date of the seizure. But notwithstanding this error, since there is no evidence of mitigation within the rule just stated, it is not perceived that Caryl & Co. were injured by the error. The error is not one for which the judgment will be reversed.

IV. The defendants' further ground of assault upon the judgment is that the execution under which the constable made the levy was void. Without entering into an extended discussion of this point of objection, it is sufficient to say that if the execution was void it afforded no protection for the constable nor to Caryl & Co. who advised and directed or subsequently rati-

fied the act of the constable in seizing the plaintiffs' property. *Prima facie*, they were trespassers *ab initio* for seizing the property under it. *Barker v. Braham*, 2 Wm. Blacks. 866; *Gunz v. Heffner*, 33 Minn. 215; *Snydacker v. Brosse*, 51 Ill. 361; *Foster v. Wiley*, 27 Mich. 244; *Kerr v. Mount*, 28 N. Y. 659–664; *Chapman v. Dyett*, 11 Wend. 31; *Lyon v. Yates*, 52 Barb. 237; *Smith v. Shaw*, 12 Johns. 257; *Coddington v. Lloyd*, 8 Ad. & L. 449; *Thomas v. Hinsdale*, 78 Ill. 259.

We have carefully considered the other points made in the very elaborate and exhaustive brief of the defendant; but find nothing therein which would justify us in reversing the judgment. We do not think any of the vices pointed out in the plaintiffs' instructions are such as prejudice the defendants on the merits. The judgment must be affirmed. All concur.

### ON MOTION FOR REHEARING.

SMITH, P. J.—Action of trespass *de bonis asportatis*.

The defendants' answer, in effect, admits the execution of the mortgage, for it as therein alleged "that after the execution of the said mortgage," etc. This must be regarded as an explicit admission of the execution of the mortgage charged in the petition to have been executed by Lund to plaintiffs.

It is expressly admitted by the answer that Russell, who was defendants' attorney, through Fish, another attorney, directed the constable to make the levy on the goods. From that part of the answer, which alleges that the goods, levied on by the constable under the execution in favor of the defendants, were released and duly tendered to plaintiffs and by them refused, is implied the admission by the defendants

that the goods were taken out of the possession of the plaintiffs.

Under this state of the pleadings the plaintiffs, to prove their cause of action, were only required to show the value of the goods so wrongfully taken from their possession by the constable, and this was done. The implied admission of the answer was that the plaintiffs were in the possession of the goods under their mortgage, which was given to secure their debt, and, if the admissions of the answer are not that broad, the evidence most clearly tends to establish the fact.

Now, as the plaintiffs were in possession of the goods, having a special property therein at the time the defendants caused the constable to make the levy thereon of what the latter say was a void execution, it cannot concern the defendants whether the plaintiffs' possession was that of mortgagee or pledgee. It could not avail defendants as a defense against their wrongful act whether the plaintiffs' possession, which they had caused to be invaded, was acquired in the one way or in the other. The vital question being whether the plaintiffs were in the possession of the property at the time of its caption.

The answer, in effect, admits the trespass, and pleads as a justification the offer to return the property. The difficulty about this defense, as suggested in the opinion, is that defendants did not preserve the property for plaintiffs' use after their refusal to accept it, and thus be in continued readiness to return it. *Ward v. Moffett*, 38 Mo. App. 395.

The other special defense interposed by the answer in effect is, that the trespass was directed by another attorney, who was acting under the directions of the defendants' attorney, and that the latter had no authority from defendants to employ the former, and, therefore, the defendants are not liable for the wrong

committed. The authorities cited in the opinion show most conclusively that if the constable wrongfully made the levy without the knowledge of defendants' attorney, and he afterwards approved or ratified the act of the constable, that the defendants are liable to plaintiffs therefor. The letter of defendants' attorney to plaintiffs' attorney shows the approval and adoption by him of the constable's act in levying on the property if he had not previously directed the same. But whether defendants' attorney directly ordered the constable to make the levy, or did so through his clerk or another attorney, is of no consequence, since, under the law as declared by the authorities, the defendants were responsible to the plaintiffs for the acts of their attorney, though unwarranted by the law. The evidence tends to show that defendants' attorney ordered the levy to be made, and, though he had no special authority so to do, yet as to the plaintiffs he must be held to have had an implied authority from defendants for that purpose. The defendants are in no better situation than they would have been had they expressly authorized their attorney in the first instance to direct the constable to make the levy. The case must be treated, as far as these plaintiffs are to be affected, as one where the defendants directed the commission of the wrong.

We cannot see that the mere fact that Russell had been employed by plaintiffs in another suit incapacitated him from accepting employment by defendants, or, if so, that plaintiffs are in any way to be affected thereby. If Russell was guilty of any wrongful conduct as attorney of the defendants, it nowhere appears that the same was with the connivance or at the instigation of plaintiffs.

In any view which we have been able to take of the case we think the judgment is for the right party.

We cannot see that any of the matters complained of prejudice the defendants on the merits. We think the motion for a rehearing should be overruled.