BY THE

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1910.

---

MARY McINTYRE, Respondent, v. FEDERAL LIFE
INSURANCE CO., Appellant.

Kansas City Court of Appeals, March 7, 1910.

1. **INSURANCE: Life: Oral Contract: Reinsurance: Effect on Insured of Contract Between Companies.** Plaintiff's mother carried a life insurance policy for $1,000 in the Union Life Insurance Company. Plaintiff was the beneficiary in said policy. The premiums were $6.27 payable monthly. In July, 1904, plaintiff was notified that said company had sold out its business to defendant. The agent who had formerly collected the premiums for the old company continued to collect the same, and represented that he collected the same for the new company. Plaintiff's mother died July 3, 1905. The defendant then claimed that it held an "impairment lien" against said policy, which would reduce its liability thereunder to $269.11. There was evidence tending to show that the defendant had agreed to carry the

policy on the same terms as had the old company, and that the plaintiff had never consented to be bound by any agreement between the two companies. Under the evidence plaintiff was not bound, as a matter of law, by the terms of the contract between the two companies, but was entitled to go to the jury on the issue that she paid her money to defendant under the terms of an oral contract, and that issue was properly submitted in plaintiff's instructions.

2. ———: Insurance: Evidence: Statute of Frauds. Neither a contract of insurance, nor a contract of reinsurance need be written.

3. ———: Insurance: Authority of Agent: Estoppel. The defendant having accepted and retained the benefits of the contract made by one acting as its agent, it is, under the evidence in this case, estopped to deny his authority to make such contract.

4. ———: Pleadings: Insufficient Petition: Waiver by Answer: Express Aider. The question of whether or not plaintiff's petition stated a cause of action was waived by defendant's answer. The common law rule of pleading known as "express aider" still obtains in this State, and under that rule the omission to state a material fact in the petition is cured if the defendant puts the matter in issue by his answer.

5. PLEADINGS: Construction: Strict or Liberal, After Verdict. The rule that pleadings are most strongly construed against the pleader has no application after answer filed, and verdict made, the rule then being that the petition is to be liberally construed, and every reasonable inference indulged in favor of the pleader.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*C. A. Atkinson* and *Harkless & Histed* for appellant.

(1) Pleadings are construed most strongly against the pleader. Vol. 2, Mo. Ann. Stat. 1906, sec.

142 App—17

3418; Rogers v. Wolfe, 130 Mo. 1; Egan v. Insurance
Co., 27 La. 268; Stocks v. Mueller, 1 Mo. App. 168;
Howard v. Goshow, 33 Mo. 118. (2) The court erred
in permitting plaintiff to introduce in evidence letter
dated July 16, 1904. Life Ins. Co. v. Sefton, 53 Ind.
380; Life Ins. Co. v. Schlink, 175 Ill. 293; Leslie v. St.
Louis, 47 Mo. 472. (3) Mrs. McIntyre, in dealing
with Holroyd and Brazier did so at her peril and it
was her duty to ascertain the authority, if any, each
of them possessed, and she was not at liberty to charge
the defendant by relying upon any assumption of au-
thority by either of them. Agency cannot be proven
in the manner attempted to be proven by plaintiff.
Mechem on Agency, secs. 276, 285, 289, 706, 710 and
716; Story on Agency (9 Ed.), secs. 17, 126, 133 and
134; Trask v. Ins. Co., 53 Mo. App. 625; The People
v. Courson, 87 Ill. App. 254; Embree v. Ins. Co., 62
Mo. App. 132. (4) The court erred in refusing to
instruct the jury as requested by defendant at the close
of all the evidence, said instruction being one directing
the jury to find for plaintiff in the sum of $300. May
on Insurance, sec. 63; Frye v. Life Ins. Co., 31 Fed.
197; Parsons v. Life Ins. Co., 31 Fed. 305; Weingart-
ner v. Life Ins. Co., 32 Fed. 314. (5) The burden of
proving an oral contract of reinsurance was upon
plaintiff and the law requires this proof to be so clear
and forcible as to leave no room for reasonable doubt.
Chaney v. Insurance Co., 62 Mo. App. 45; Rogers v.
Wolfe, 104 Mo. 1; Brownlee v. Fenwick, 103 Mo. 420.
(6) Mrs. Hughes accepted the reinsurance contract
between the two insurance companies with all its bur-
dens as well as its benefits, and became a party thereto
the same as if she had signed it on July 16, 1904.
Bolles v. Mutual Res. Fund Life Assn., 220 Ill. 400;
Brown v. Mutual Res. Fund Life Assn., 224 Ill. 576;
Hodge v. Steel Corp., 54 Atl. 1; 2 Pomeroy, Equity
Jur., secs. 608-628; Cordova v. Hood, 17 Wall. 1; Joy

v. City of St. Louis, 138 U. S. 1; Mayor v. Whittington, 78 Md. 231; Moore v. Township of Kenockee, 75 Mich. 332; Wade on Notice (2 Ed.), secs. 30 and 309; Mettart v. Allen, 139 Ind. 644; Barrett v. Davis, 104 Mo. 549; Heddick v. Beeler, 110 Mo. 91; Herman on Estoppel, sec. 800; Johnson v. Trust Co., 159 Ind. 605, and authorities therein cited; Krag-Reynolds Co. v. Oder, 21 Ind. App. 333, and authorities therein cited; Bigelow on Estoppel (2 Ed.), 511; Life & Trust Co. v. Eton, 82 N. E. 480; Parvis v. Mutual Res. Life Ins. Co., 100 N. W. 39. (7) There was no evidence that defendant ever held out Holroyd, Brazier or any other agent as having any authority whatever to waive any of the terms or conditions of said contract or make a new contract on its behalf. Kerney v. Life Ins. Co., 109 Ill. App. 609; Herman on Estoppel, sec. 800; Johnson v. Trust Co., 159 Ind. 605; Bigelow on Estoppel (2 Ed.), 511. (8) There was no ratification by defendant of anything that was said or done by either Mr. Holroyd or Mr. Brazier as to any oral contract of reinsurance which it is alleged and claimed by plaintiff was made with her as agent of Mrs. Catherine Hughes. Ratification can only be where there is full knowledge of all the facts. Owing v. Hull, 9 Peter 607; Barrett v. Davis, 104 Mo. 549; 1 Am. and Eng. Ency. of Law (2 Ed.), secs. 965, 1189, 1190 and 1204; Saville & Somes & Co. v. Welsh, 58 Vt. 683; Steumle & Manawal v. Railway, 42 Mo. App. 73; Hyde v. Larkin, 35 Mo. App. 366; Johnson v. Fecht, 94 Mo. App. 605; Mechem on Agency, secs. 132, 149 and 750; Story on Agency (9 Ed.), sec. 239; Clark v. Clark, 59 Mo. App. 532.

*Ewing C. Bland* for respondent.

(1) The petition in this cause stated a cause of action in favor of the plaintiff and against the defendant. 1 Cooley's Briefs on Insurance, p. 397; Lingentelter v. Insurance Co., 19 Mo. App. 252; Worth v. Insurance Co., 64 Mo. App. 583; Lee v. Porter, 18 Mo.

App. 378; Winn v. Hillyer, 43 Mo. App. 139; Hale v. Stuart, 76 Mo. 20; Hughes v. Carson, 90 Mo. 399; Grace v. Nesbit, 109 Mo. 9; Allen v. Chouteau, 102 Mo. 318; Bank v. Pettit, 85 Mo. App. 499; Welch v. Chicago, etc., Soc., 81 Mo. App. 37; Gunther v. Aylor, 92 Mo. App. 161. (2) There was no error in admitting in evidence the letter marked "Exhibit F." Malecek v. Railway, 57 Mo. 17; Northrup v. Ins. Co., 47 Mo. 435. (3) The conversations testified to by Mrs. McIntyre as having taken place between her and Mr. Holroyd on August 8, 1904, and between her and Mr. Brasier about December 10, 1904, were competent. Gibson v. Insurance Co., 85 Mo. App. 41; Hayward v. Insurance Co., 52 Mo. 181; Bush v. Insurance Co., 85 Mo. App. 155; Ritchey v. Insurance Co., 104 Mo. App. 146; Bank v. Frickie, 75 Mo. 178; Hackett v. Van Frank, 105 Mo. App. 384. James v. Insurance Co., 148 Mo. 1. (4) Mrs. Hughes was not bound by the terms of the so-called reinsurance contract between the Union Life and the defendant. Welch v. Chicago, etc. Soc., 81 Mo. App. 37, *supra;* Cravens v. Life Ins. Co., 148 Mo. 583; Horton v. Insurance Co., 151 Mo. 604; R. S. 1899, sec. 1024; R. S. 1899, sec. 7889. (5) Plaintiff was not bound to prove any part of her case beyond a reasonable doubt. Chaney v. Insurance Co., 62 Mo. App. 45. (6) There was evidence to go to the jury in this case on the right of plaintiff to recover. 1 Am. and Eng. Ency. Law, pp. 988 and 999; Bailie v. Insurance Co., 73 Mo. 381; R. S. 1899, sec. 8002; Manufacturing Co. v. Constructing Co., 124 Mo. App. 365; Downing v. Ringer, 7 Mo. 585; 2 Am. and Eng. Ency. of Law, p. 428; City of Desota v. Insurance Co., 102 Mo. App. 1; Ritchie v. Insurance Co., 104 Mo. App. 146; 3 Cooley's Briefs on Ins., p. 2541; Rosenbaum v. Insurance Co., 101 Mo. App. 126.

JOHNSON, J.—Action on a contract of life insurance. Plaintiff recovered a judgment for the full

amount of her demand and the case is here on the appeal of defendant.

The cause of action pleaded in the petition is grounded on an oral contract of reinsurance. On January 14, 1902, the Union Life Insurance Company, an Indiana corporation, issued a written policy of life insurance to Catherine Hughes whereby, in consideration of an annual premium of seventy-one dollars, the company agreed to pay plaintiff, who was a daughter of the assured, the sum of $1000, on the death of the assured. Provision was made in the policy for the payment of the premium in monthly installments of $6.27 and the premiums were paid monthly by plaintiff who acted as her mother's agent. These payments were made to an agent of the company who called at plaintiff's home to collect them. .

In July, 1904, plaintiff received through the mails a communication signed by the officers of the company to the effect that the assets and business of the company had been transferred to the Federal Life Insurance Company (the defendant) and that the policy in suit had been reinsured in the defendant company. The statement was made that "Under the contract with the Federal Life the net amount of admitted assets transferred to it will be credited to the Union policy-holders," but there is no intimation in the letter of any impairment of the assets of the Union Company or of any provision in the contract of reinsurance for an impairment lien on the policies reinsured. In conclusion the letter says: "The Federal Life is an exceptionally strong and ably managed 'Old Line' company and no Union policy-holder will ever have reason to regret this transfer. We hope you will remain a permanent policy-holder in the Federal."

In the following month, the agent who had collected premiums for the Union company called at plaintiff's home to collect the installment then due. He stated that the policy had been transferred to the de-

fendant and that he was the agent of defendant. Plaintiff testified she showed him the letter from the Union company "and he told me to go on with my premiums just the same as I paid the old company, that the policy was just the same and the full value of the policy would be paid just the same as the Union Life Insurance Company." Thus assured, plaintiff paid the monthly premium and, thereafter paid the premiums until the death of her mother, which occurred July 3, 1905. There can be no doubt, under the evidence, that the collector was the agent of defendant to make these collections and that defendant received and retained the premiums. Shortly after the agent of defendant collected the August premium, another agent of defendant called on plaintiff and, according to her testimony, stated that the insured "would have to pay a larger premium or otherwise would have to be re-examined." Plaintiff replied by repeating the conversation she had with the collector and by stating that she "stood on that agreement and would not have her mother re-examined or pay any more premium than she had been paying to the defendant." The version of this conversation given by the defendant's evidence differs materially from that of plaintiff, but the witnesses do not disagree about the fact that nothing was said in this conversation relative to an impairment lien. Defendant's agent says he tried to tell plaintiff about the lien but she grew very angry and would not listen. This is denied by plaintiff.

Over the objection of plaintiff, defendant introduced in evidence the following letter written to plaintiff by defendant under date of July 16, 1904:

"To the Policy-Holders of the Union Life Insurance Company of Indiana:

"You are hereby notified that this company has reinsured and assumed the certificates or policies of the Union Life Insurance Company, including your Policy No. 9065, subject to the terms of a contract between

the Union Life Insurance Company and the Federal Life Insurance Company dated July 16, 1904. Upon our records your policy will be known as No. 6730, to which number you will please refer in correspondence relating to it. In accordance with said contract the Federal will continue your policy in force by your making to it the payments as and when required by the terms of your policy and said contract. You may remit your premiums direct to the office or to our Indianapolis office in the Lemcke Building, and such of you as have heretofore paid to collectors may continue so to do, as may best suit your convenience.

"The Federal is and always has been strictly an 'old line' legal reserve company. You may confidently rely upon the Federal carrying out every promise and meeting every obligation promptly. The Federal will treat you and your beneficiary fairly, honorably and equitably. There is no better company than the Federal. It has never scaled a policy claim a dollar and has paid all such claims immediately upon receipt of completed proofs.

"Hoping that you will continue your policy in the Federal and remain one of our policy-holders for many years to come," etc.

On the death of the assured, defendant claimed that it held an impairment lien against the policy which reduced the amount of its liability to plaintiff, the beneficiary, to $269.11. The reinsurance contract between defendant and the Union Company contains provisions which, had plaintiff given her assent to that contract, either expressly or by implication, would entitle defendant to assert a lien against the policy in the amount claimed. Plaintiff denies assenting to the contract and denies all knowledge of any arrangement by which the reinsured policies might be subjected to the burden of impairment liens. Her position thus is stated in a letter she wrote defendant after her mother's death.

"I never was informed or given to understand anything other than that the policy which she held would be paid in full.   Think of the unreasonableness of me paying $75.24 per year for $269.11 of protection, when other companies were soliciting her for $1000 insurance at the same rate.   It seems strange to me that you say you sent a representative down here to inform she and I of these unreasonable conditions of her insurance.   Why could you not have informed me in writing or placed these conditions on my policy so it would be understood?   You know you never did so.   You also know that neither she nor I ever would or did consent to anything of this character as we would never have paid a premium on such a contract."

At the request of plaintiff, the court instructed the jury as follows: "The court instructs the jury that if you believe and find from the evidence that the Union Life Insurance Company of Indiana issued, on the 2nd day of January, 1902, a policy of insurance upon the life of Catherine Hughes in favor of Mary McIntyre, as beneficiary, and that Catherine Hughes had, on or about the 8th day of August, 1904, through her agent, Mary McIntyre, if she was such agent, a conversation with Harry Holroyd and that said Holroyd was a collector of the defendant on said day, and that said Holroyd told Mary McIntyre that if Catherine Hughes would pay to defendant premiums of insurance in the same manner and in the amounts that she had been paying the said Union Life Insurance Company, then, should the said Catherine Hughes die while such agreement between her and the defendant was in force, that the defendant would pay to the plaintiff, as beneficiary, the sum of one thousand dollars as provided in the said policy of the Union Life Insurance Company, and if you find and believe that the said Catherine Hughes, by Mary McIntyre, her agent, if she was her agent, paid to said Holroyd the sum of $6.27 and continued to pay defendant such sum monthly before the 20th day of each

month thereafter until the death of said Catherine Hughes, and that said first payment of $6.27 was sent to the defendant by said Holroyd and the defendant received and kept the same and received and kept all the other premiums paid by said Catherine Hughes to it mentioned in evidence, if you find that such premiums were paid, and that during the month of December, 1904, the defendant sent one Brasier to see the said Catherine Hughes about her policy and to explain and fix up the insurance between the said Catherine Hughes and the defendant, and that said Brasier talked with Catherine Hughes or her agent, and that said Brasier was an authorized agent of defendant and the said Brasier was informed by said Catherine Hughes or her agent about the conversation with said Holroyd heretofore mentioned herein, if you find there was any such conversation, and that the defendant afterwards continued to receive and keep the said premiums of $6.27 monthly paid thereafter, if you find they were paid, until the death of said Catherine Hughes then you will find for the plaintiff in the sum of $1000 with interest at the rate of six per cent per annum from July 13, 1905, unless you further find that plaintiff or Catherine Hughes accepted the terms of the reinsurance contract mentioned in evidence."

Many objections to the sufficiency of the petition to state a cause of action are urged by defendant but most of these objections need not be discussed, since we find they were waived by the answer. The common law rule of pleading known as "express aider" has not been abolished by statute but still obtains in this State and under that rule the omission to state a material fact in the petition is cured if the defendant puts the matter in issue in his answer. [Hughes v. Carson, 90 Mo. 399.]

Moreover the rule of pleading invoked by defendant that "pleadings are most strongly construed against the pleader" ceases to have application to a

petition after answer to the merits is filed and the issues are tried. The rule of construction then to be applied is that the petition is to be liberally interpreted and every reasonable inference indulged in favor of the pleader. We do not agree to the proposition that the contract alleged in the petition is within the statute of frauds. It is well settled that a contract of insurance needs not be evidenced by a written policy. A parol agreement is sufficient. [Lingenfelter v. Insurance Co., 19 Mo. App. 252; Worth v. Insurance Co., 64 Mo. App. 583; 1 Cooley's Briefs on Insurance, p. 397.] So, too, a contract of reinsurance is not required to be in writing. It is not a promise to pay the debt of another but a contract of insurance.

The evidence of plaintiff shows that defendant by its duly authorized agents entered into a contract of reinsurance with plaintiff's mother, by the terms of which the obligation of the Union company was assumed by defendant without impairment or abatement. It is argued that plaintiff failed to prove that the right to bind defendant by his representations was within the scope of the agent's authority, but we think the evidence of plaintiff shows that the agents sent out by defendant were acting within their authority and, since defendant accepted and retained the benefits of the agreement made by its agent, it is estopped from repudiating the obligations of that agreement.

Instead of convincing us that plaintiff must be held to the terms of the written contract of reinsurance between defendant and the Union Company and, consequently, must suffer the loss of more than two-thirds of her insurance, we think the evidence of defendant strongly corroborates the inference, supported by plaintiff's evidence, that the provision for an impairment lien was purposely and artfully concealed from policy-holders, and they were deluded into the belief that the reinsured policies would be paid in full. In addition to sending out agents to make oral statements

to that effect, the letter of July 16, 1904, is nothing short of a false representation evidently made to deceive. The statement appears therein that the policy is assumed "subject to the terms of a contract between the Union Life Insurance Company and the Federal Life Insurance Company," but, subsequent language is intended to convey the impression that the reinsured policies will be paid in full and, therefore, to negative the idea of the inclusion of a different agreement in the contract. If such wrongful and fraudulent intent to deceive was not in the mind of defendant, why did it say in the letter, "You may confidently rely upon the Federal carrying out every promise and meeting every obligation promptly. The Federal will treat you and your beneficiary fairly, honorably and equitably. There is no better company than the Federal. *It has never scaled a policy claim a dollar* and has paid all such claims immediately upon receipt of completed proofs." We shall not hold as a matter of law that plaintiff was bound by the terms of the contract made by the two companies, but say that she was entitled to go to the jury on the issue that she paid her money to defendant under the terms of an oral contract. This issue was properly submitted in the instruction we have quoted. Manifestly, the verdict and judgment are for the right party and there being no substantial error in the record, the judgment is affirmed. All concur.