MAY B. NORMAN, Respondent, v. THE ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, Appellant.

Kansas City Court of Appeals, March 4, 1912.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Pleading. Where a demurrer to a petition is interposed and overruled and an answer to the merits filed, the petition cannot be attacked on appeal except on the ground that it is so vitally insufficient that it cannot support a verdict.

2. TRIAL PRACTICE: Continuance: Discretion of Court. The question of whether or not a continuance should be granted is one addressed to the sound discretion of the trial judge and an appellate court will not interfere with the ruling unless it appears to have been an abuse of discretion.

3. FRATERNAL BENEFICIARY ASSOCIATIONS: Delivery of Certificate: Death Before Delivery. When the insurer, with full knowledge of the death of the applicant before the delivery of the certificate, retains the consideration and does not offer to refund it, such fact becomes conclusive evidence of an acceptance during the life of the applicant and deprives the insurer of the benefit of the rule that one cannot contract with a dead man.

4. ————: Defense of Intoxication: Question for Jury. Under the evidence offered the case was properly submitted to the jury on the issue of intoxication of the insured.

Appeal from Vernon Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED CONDITIONALLY.

*N. T. January* for appellant; *Vorys, Sater, Seymour & Pease* of counsel.

*Scott & Bowker* for respondent.

JOHNSON, J.—This suit is on a beneficiary certificate issued by defendant, a fraternal beneficiary association, to Neil R. Norman, who died at Nevada, August 22, 1910. Plaintiff was the mother of the assured and the beneficiary designated in his application. A trial of the issues resulted in a verdict and judgment for plaintiff and the cause is here on the appeal of defendant. We shall dispose of questions of pleading and practice raised by defendants before reciting the facts of the case.

Defendant demurred to the petition on the ground that it failed to state a cause of action. The court sustained the demurrer and plaintiff, with leave, amended the petition by interlineation. Defendant then renewed its demurrer but the court overruled it and defendant immediately filed answer interposing defenses we shall discuss later. Counsel for defendant argue that the last demurrer should have been sustained but we do not sanction their contention. The amendment merely amplified the averment of one of the constitutive facts of the pleaded cause and, no doubt, was prompted by an expression of the court to the effect that the averment stated a conclusion instead of a fact. We do not share this view but hold that the original petition sufficiently alleged all of the constitutive facts of a good cause of action. Moreover, by answering to the merits, defendant waived the demurrer and could not attack

the petition on appeal except on the ground that it is so vitally insufficient that it cannot support a verdict. [Rev. Stat. 1909, sec. 2119; McIntyre v. Ins. Co., 142 Mo. App. 256; Wyler v. Ratican, 150 Mo. App. 474.]

The events we have mentioned, i. e., the sustaining of the first demurrer, the amending of the petition, the filing and overruling of the second demurrer and the filing of the answer occurred on the same day, and immediately after the answer was filed the court called the case for trial. Defendant filed an application for a continuance and on the offer of plaintiff to admit that the witness, on account of whose absence the continuance was asked, would testify, if present, to the facts stated in the application, the court overruled the application and proceeded with the trial. Defendant contends this ruling was erroneous. The facts that the first demurrer was sustained and that plaintiff amended the petition, of themselves, did not give defendant a right to a continuance. The question of whether or not a continuance should be granted is one that is addressed to the sound discretion of the trial judge and an appellate court will not interfere with the ruling unless it appears to have been an abuse of discretion. [Rev. Stat. 1909, sec. 1959, 1960, 1961; Colhoun v. Crawford, 50 Mo. App. 458; Brinkman v. Lurhs, 60 Mo. App. 512; Keeton v. Railroad, 116 Mo. App. 281; Peterson v. Railway, 211 Mo. 498.]

It devolved on defendant to satisfy the court by affidavit or otherwise that on account of the amendment it could not go to trial. The amendment tendered no new issue and the application disclosed no good reason for any unreadiness on the part of defendant. But if it had, the offer of plaintiff to admit the testimony the application stated defendant wished time to secure, removed its ground for a continuance and justified the court in overruling the application.

Defendant is a fraternal beneficiary association organized under the laws of Ohio and licensed to do business in this state. Its membership is composed almost entirely of commercial travelers. It issues benefit certificates to its members, insuring them against accidental injury and in case of death caused by such injury, such certificate provides for the payment to the designated beneficiary of death benefits amounting to $6300. A commercial traveler desiring to become a member of the order and thereby to secure a benefit certificate was required, by the rules of the association, to make written application to a local lodge and his insurance would begin when his application had been accepted by the supreme lodge at Columbus, Ohio. In case there was no local lodge in a community one could be established on the application to the grand lodge of this state of twelve or more commercial travelers for membership in the order and for a charter. The grand lodge passed on the applications and if the applicants were eligible, issued them a charter, initiated them into the order and collected dues of ten dollars from each charter member. Five dollars of each member's dues was apportioned to the general fund, two dollars to the indemnity fund, two dollars to the widows and orphans' fund and one dollar to the grand lodge of this state.

In August, 1910, sixteen commercial travelers, including Neil R. Norman, applied for membership and for the institution of a local lodge at Nevada. The secretary of the grand lodge of Missouri went to Nevada August 6th, passed on the applications favorably, installed a local lodge and initiated the charter members, among them young Norman. Each of the members paid his dues which were apportioned in the manner described. The proceeds of the apportionments to the general and indemnity funds were sent to the supreme lodge at Columbus, Ohio, and those to

the grand lodge of the state were forwarded to its office in Chillicothe.

The application of young Norman contained the agreement that defendant should "not be liable for any injury or death, happening prior to the receipt and acceptance of this application and membership fee by the supreme committee of this order." The secretary of the grand lodge, though he accepted the applications of the charter members and installed the lodge did not issue the benefit certificates and it does not appear that the rules of defendant gave him authority to issue such certificates. The applications were forwarded to the supreme secretary at Columbus, were approved by the supreme executive committee and the certificates then were executed by the supreme officers and forwarded to the secretary of the local lodge at Nevada for delivery to the members. For some reason, not disclosed, the certificates were not executed until September 6th—two weeks after the death of Norman and after the supreme lodge had received notice of his death. A certificate was issued to him, probably by mistake, and sent with the others to the local secretary who delivered it to his father.

Omitting formal parts, the certificate is as follows:

"That Neil R. Norman has been duly enrolled in The Grand Commercial Army and is a member in good standing of Nevada Council No. 498 at Nevada, Missouri. He is hereby insured in a sum not exceeding sixty-three hundred dollars ($6300), provided he shall sustain, during the continuance of his membership, and while in good standing, bodily injury effected through external, violent and accidental means, which alone, shall occasion death immediately or within six months from the happening thereof subject to the provisions, conditions and requirements of the constitution of The Order of United Commercial Travelers of America. He is further entitled to all the rights and privileges of membership accruing to him under

the constitution, and he is hereby recommended to the fraternal courtesies of the brotherhood wheresoever dispersed.''

The name of the beneficiary is not 'stated in the certificate but appears in the application.

The constitution and by-laws which, by the terms of the certificate and application, were made a part of the contract, contain the following provisions: ''If any member of the order (other than a social member) who has paid, when due, all fees, fines, costs, dues and assessments charged or levied against him, shall sustain, during the continuance of his membership, and while in good standing, bodily injury effected through external, violent and accidental means, which alone and independent of all other causes, shall occasion death immediately, or within six months from the happening thereof, the Order of United Commercial Travelers of America, within ninety days of receipt of satisfactory proof of said accidental death, shall pay to the person or persons entitled thereto the sum of five thousand dollars ($5000), and shall also pay to the person or persons entitled thereto, as aforesaid, thirteen hundred dollars ($1300) in weekly installments of twenty-five ($25) each, the first of said weekly installments to be paid within ninety days from the receipt of such proof of death. . . . And, provided, further, that payment authorized under the provisions of this section shall not cover or extend to any death, disability, or loss resulting from or in consequence of . . . intentional self-inflicted injuries, fatal or otherwise (while sane or insane) ; suicide (while sane or insane). . . . And still further provided, however, inasmuch as temperance is one of the principal virtues inculcated by the order, the payments authorized under the provisions of this section shall not extend to any injury received, nor to any loss, disability or death resulting therefrom, while the insured was under the influence of any intoxicating liquor or narcotic,

whether such injury, loss, disability or death resulted in consequence of such influence or not.''

The local secretary notified the supreme secretary by wire of the accidental death of Norman immediately after it occurred and on the same day received the following telegram from defendant:

''We are just in receipt of a telegram from you, which is as follows: 'N. R. Norman member council No. 498 accidentally shot and killed last night. Dr. J. M. Yates council physician, Dr. Churchill attending physician. Please write us full particulars regarding the death and you will greatly oblige.''

Under date of January 4, 1911, defendant wrote the following letter to plaintiff's husband: ''Replying to your letter just received, permit us to say that under date of December 27th, we wrote the order's secretary, J. B. Quinlan, as follows: 'The claim of May B. Norman, filed on account of the death of Neil R. Norman, was presented to the supreme executive committee and disallowed. This is for your information. We will ask you to please advise the beneficiary and oblige.' We supposed the beneficiary had been notified by him.''

The defenses pleaded in the answer are, first, that since the death of Norman occurred before the receipt and acceptance of his application and membership fee by the supreme executive committee there was no contract of insurance in existence at the time of his death and, of course, no such contract could be made after the death of one of the parties; second, that the injury resulting in the death of Norman occurred while he was under the influence of intoxicating liquors and, third, that his death resulted from suicide.

As to the first of these defenses we do not agree with the view of counsel for plaintiff that the secretary of the grand lodge of the state had authority to issue benefit certificates to charter members of local lodges installed by him and that his acceptance of the

application of Norman completed a contract of insurance between the applicant and defendant. The rules and practices of the order demonstrate conclusively that the sole authority to make such contracts was lodged in the supreme executive committee and until it did something to evince its acceptance of the application which was but a proposal of the applicant to enter into a contractual relation with defendant, no contract could be existent. [Rhodus v. Ins. Co., 137 S. W. 907, and cases cited.]

Since the certificate made out in favor of Norman was not mailed for delivery by defendant until after his death, the defense of no insurance would have been invulnerable had defendant done nothing to show that in fact it had accepted the proposal. The mailing of the certificate is one way of announcing an acceptance, but it is not the only way. The act of receiving and retaining the consideration of the insurance tendered by the applicant certainly should be regarded as strong evidence of acceptance and when with full knowledge of the death of the applicant before the delivery of the certificate the insurer still retains the consideration and does not offer to refund it, such fact becomes conclusive evidence of an acceptance during the life of the applicant and deprives the insurer of the benefit of the rule that one cannot contract with a dead man. In the Rhodus case, as in the present one, the defendant, with full knowledge of the death of the applicant before the delivery of the policy, retained the premium and afterward defended an action on the policy on the ground of no insurance. Speaking through ELLISON, J., we said of this defense:

"It is true that 'there can be no valid insurance upon the life of one already dead at the time when the contract becomes complete.' [1 Cooley's Briefs, 113.] But the evidence in this case does not show the negotiation and completion of a contract to insure the life of one who was dead. In other words, this case

does not present an instance of a proposition to insure the life of a dead man. This is a case where the proposition for insurance was made by a live man, in good health, to an agent authorized to receive it and to transmit it to the defendant company. It was then for the approval or rejection of the company. As matters stood contractually, the company could have rejected it, and more than that, it could have relied upon the provision which we have quoted from the application that there was to be no _contract until a policy was issued and delivered. But the company did not choose to stand on these conditions. It waived them by accepting the premium which was paid for *insurance,* with full knowledge of what the payment was for and of the assured's death. By that act it adopted the agent's acts as consummating a contract of insurance without a formal approval of the application by the medical director, or the issuance of a policy.''

Following that decision, we must hold that the defense of no insurance is not well founded.

Passing to the remaining defenses we find the evidence warranted the trial court in submitting to the jury as issues of fact the questions of whether or not young Norman was under the influence of liquor at the time of his injury, and whether his death was caused by the intentional or accidental discharge of a revolver he had in his hand.

An eye-witness of the event offered as a witness by defendant testified that Norman had been drinking and was under the influence of intoxicants, and further stated facts and circumstances from which an inference of suicide well might be drawn, but this witness made statements immediately after the injury which were contradictory of his testimony at the trial and his testimony as to both of the main. issues is opposed by strong evidence to the effect that Norman was not under the influence of intoxicating liquor and

that his injury was accidental. In such state of evidence the trial court could not well do otherwise than to send these debatable issues to the jury. The burden was on plaintiff of showing that the injury was accidental and we think her proof aided by the presumption of law against suicide was sufficient to sustain her burden. The instinct of life is the strongest of animate nature and the presumption against its willful violation is just as strong as the instinct itself, though the presumption is allowed to be overthrown by a mere preponderance of evidence against it. Norman was an unmarried man, twenty-two years old and was living with his parents. He had spent the evening with young companions going about town and had gone to the room of one of them to stay all night. While in the room he found a loaded revolver under a pillow and had it in his hand when his companion told him to put it down. An instant later the revolver was fired and the bullet entered Norman's head above and behind one of his ears. His companion was not looking at him at the time of the shot. There were no powder burns and there is expert evidence in the record to the effect that because of the absence of such burns the pistol must have been held at such a distance from his head and in such a manner as to preclude the possibility of an intentional discharge and to indicate that the two young men were scuffling for the possession of the weapon and in the scuffle, accidentally, discharged it. On the hypothesis that Norman was not intoxicated there is an entire absence in the evidence of any motive prompting him to take his own life. The jury were entitled to infer from such facts that the injury was accidental.

Other questions raised by defendant have been considered and are ruled adversely to its contention. The case was fairly tried and the judgment is affirmed.

All concur.

## ON MOTION FOR REHEARING.

A re-examination of one of the questions argued in the briefs has convinced us that the verdict and judgment are excessive but that the error is one that may be cured by remittitur. The obligation of defendant expressed in the contract was to pay the beneficiary $5000 within ninety days after receipt of proofs of loss, and further to pay $1300 in weekly installments of twenty-five dollars each, the first installment to be paid within ninety days of proofs of loss. Defendant denied all liability, thereby waiving proofs and also waiving the benefit of the clause giving defendant ninety days to pay the principal sum of $5000 and to begin the payment of the weekly installments. [Hasmer Bros. v. Ins. Co., 80 Mo. App. 419; Phillips v. Ins. Co., 14 Mo. 220.]

This suit was commenced nineteen weeks after the death of the member and at that time the matured part of defendant's obligation consisted of the principal sum of $5000 and of nineteen past due weekly installments of twenty-five dollars each. The instructions given at the request of plaintiff expressed the proper view of the extent of the liability with one exception, viz., through an error they stated the weekly installments at fifty dollars per week instead of twenty-five dollars. The verdict followed the instructions and therefore was excessive in the sum of $475. The order of affirmance is withdrawn and in lieu thereof the following order is made. If within ten days from the date of the filing of this opinion a remittitur of $475 is entered by plaintiffs the judgment will be affirmed; otherwise it will be reversed and remanded. All concur.