This is a suit by the beneficiaries of a certificate of life insurance.
On February 25, 1914, defendant Sovereign Camp Woodmen of the World, a fraternal insurance organization, in consideration of the payment of certain premiums, issued to Forest C. Bear its certificate of insurance in which William T. Bear and Maggie Bear, father and mother of said certificate holder, were named as beneficiaries, by which said certificate defendants agreed to pay said beneficiaries the sum of $1,000 if the death of the insured occurred within two years, and the sum of $2,000 if the death of the insured occurred after the certificate had remained in full force and effect more than two years from the date thereof.
The said certificate provided that in the event of the intentional death of the certificate holder by his own hand and act, whether sane or insane, the same would be null and void. Further it was provided that the said certificate was issued and accepted subject to all of the expressed conditions of the same, together with the articles of incorporation, constitution and laws of the order and the application for membership, all of which constituted the agreement between the society and the member. The certificate also provided, in case of suicide whether sane or insane, "all moneys which *Page 84 
shall have been paid and all rights and benefits which have accrued on account of this certificate shall be absolutely forfeited without notice or service." The constitution and laws of the order contained similar provisions.
Forest C. Bear, holder of the certificate, was drafted into the army during the late world war and while on board a transport, on his way to France with a company of casuals, died as a result of gunshot wounds, on September 22, 1918. The defendant organization denied liability under the certificate on the ground that the certificate holder had come to his intentional death by his own hand and act. This was the defense pleaded in the answer. By agreement the cause was tried before the court without aid of a jury, resulting in favor of plaintiffs in the sum of $2212.33, and defendant appeals.
The testimony tends to show that Forest C. Bear sailed with his company on the night of September 1920, 1918; that he had previously been placed with the casuals on account of ill health. On the evening of September 19, an officer was called to Bear's barracks and was told that Bear was making a disturbance. The officer stated that Bear's "nerve had been broken by his health, or the thought of going over seas had sort of gotton him into his nervous condition." After sailing and on the morning of September 20, Bear was detailed with other privates to keep the officers' deck "D" clean. He was given light tasks. On the morning of September 21, he did not report for duty with his detail. His sergeant found him apart from the other men, brought him back and put him to work. The following morning he was again missing from detail. His sergeant learned that he had been on sick report but marked for duty, investigated and found him at his bunk, walking around it and talking to himself. The sergeant asked what was troubling him but Bear made no reply and did not seem to hear. A little later the same morning the sergeant again went to the bunk room and *Page 85 
again found Bear walking around the bunk and talking to himself. He took Bear back to deck "D" and put him to scrubbing and cleaning door knobs, thought to to be light work.
Witnesses Tilden and Schramm testified to Bear's peculiar talk and actions. Lieutenant Tynan states that in the forenoon of September 22, 1918, he went into his stateroom and found Bear therein having in his hand Tynan's pistol which Tynan thought unloaded, but on discovering that the revolver had one cartridge in it, he took the weapon away from Bear and tried to ascertain where he had secured the cartridge, but without success. The pistol, unloaded, had been hanging on the wall. Finding no other gun in the room, Tynan left and was gone fifteen to twenty minutes and on returning to the room he found Bear lying on the floor, head toward the door, right hand across the body touching the shoulder, and a pistol on the floor beside the body. This was not the same weapon that had been taken away from Bear 15 or 20 minutes before. The revolver found beside the body was a .45 calibre, double-action Colt's U.S. Army model, and was the property of a Captain Smith. Two empty shells were found in the chambers of the weapon and a cartridge belt was on a chair. Enlisted men were not allowed to have pistols or ammunition in their possession on the transport. The navy surgeon who examined the body testified that there were two wounds in the chest within an inch of each other located immediately over the heart.
The chief contention between the parties is whether the death-dealing wound was intentionally self-inflicted. The case rests entirely upon circumstantial evidence and the court, sitting as a jury, must have arrived at the finding by putting together all of the relative circumstances before him. The controlling circumstances in the case must be considered and a conclusion arrived at in the light of reason.
Defendant maintains that all the facts and circumstances of the case point to intentional self-destruction, *Page 86 
and that under the covenants of the policy plaintiff cannot recover. Plaintiff meets this contention with the counter proposition that under the physicial conditions surrounding the death the natural presumption in against the theory of suicide.
The controlling case, and the one which seems most nearly to meet the conditions of the case at bar, Reynolds v. Casualty Co.,274 Mo. 83. In that case it is held, in effect, that where suicide is pleaded as a defense, the burden is upon the defendant to establish the fact by a preponderance of the evidence. This for the reason that the presumption arising from the love of life is, like every other natural presumption, always within the contemplation of the court.
The testimony tends to show that Forest C. Bear had not been well was frail and nervous, had been detained for a while from joining his company over seas, and was depressed in mind while on the transport and that he acted peculiarly; the clear inference being that of possible intentional self-destruction.
The testimony further shows that there were two gunshot wounds immediately over the heart, within an inch of each other, and that the ball from each shot must have passed through the heart. The testimony of three physicians was to the effect that either wound would have caused instant death and have paralyzed every muscle and nerve in the body. That being true, the natural inference would be against the theory of suicide. Had there been but one wound the inference would have been strong in favor of the suicide theory. If a shot through the heart produced immediate paralysis and death, the deceased could not have fired the second shot, especially as the revolver from which the shots evidently were fired required a distinct and separate action for each discharge of the weapon. If the second shot must have been fired by some hand other than that of decedent, the inference is reasonable that the first shot was fired by the same hand. *Page 87 
We must therefore conclude that defendant failed to produce a preponderance of evidence in support of the suicide theory. We do not invade the realm of conjecture in order to arrive at this conclusion, as an application of common sense and natural deduction will bring the result above expressed. In addition to the facts discussed above relative to the two death-dealing wounds there is positive proof that there were no powder burns observed on decedent's clothing or flesh at or near the vicinity of the wounds.
This condition is met by defendant by the declaration that the cartridges used were loaded with smokeless powder. But to persons accustomed to the use of fire-arms this explanation is not convincing, for it is a well-known and indisputable fact that any powder, smokeless or otherwise, when exploded produces a flame which will burn and scorch at a distance of a foot or so. We must conclude, therefore, that the shots must have been fired at some distance. [Norman v. U.C.T. of America, 163 Mo. App. 175, 145 S.W. 853.]
In Richey v. W.O.W., 163 Mo. App. l.c. 246, the court held: "It is true that in such cases as this, suicide is an affirmative defense and, generally, it is a defense that should be submitted to the jury as an issue of fact, but it is not true that an affirmative defense cannot be so clearly and indisputably established that its existence should not be accepted by the court as proved in law. Where all the evidence in a case is of such character that it affords no room for reasonable controversy about an ultimate fact, there can be no issue, and, therefore, nothing concerning such fact for the triers of fact to determine. In each of the cases cited by plaintiff there was room in the evidence for a reasonable inference against the fact of suicide and the issue properly was submitted to the jury." [Citing Almond v. Modern Woodmen, 133 Mo. App. 382, 113 S.W. 695; Claver v. Woodmen, 152 Mo. App. 155, 133, S.W. 153, etc.]
So in the case at bar there was room for a reasonable inference against the fact of suicide, and the court did *Page 88 
not err in overruling defendant's motion for a declaration of law in the nature of a peremptory instruction. See Bacon's Life 
Accident Insurance (4 Ed.), sec. 438, where it is said: "When circumstantial evidence, only, is relied on, the defense fails unless the circumstances exclude with reasonable certainty any hypothesis of death by accident, or by the act of another."
Defendant's second contention is that the court erred in admitting, over the objection of defendant, the testimony of Doctors Janes, Longfield and Rea in relation to the question of shock and its effect, and in relation to powder burns, because they did not show themselves qualified as experts.
This objection we do not consider well taken and an extended discussion of the question is unnecessary. The matter of powder burns is of common knowledge and the result of every day experience of the ordinary Amercan citizen, and is not a mater for elucidation by experts. As to the question of the effect of shock on the human body, in the opinion of this court, there could be no higher degree of expert knowledge than that of qualified physicians and surgeons, from the very educational requirements of their profession.
The third and last contention of defendant is that the court erred in excluding the testimony of its witnesses Wilbur, Schramm, Tilden and Tynan, as to the mental condition of decedent.
The objection was sustained on the ground that the witnesses being non-expert, did not give the facts upon which they based their opinions. This objection was properly sustained.
The cause was tried without reversible error, the finding was for the right party, and the judgment is affirmed.
All concur. *Page 89