## APRIL, 1925.

### TOM FISHER v. THE STATE.

No. 8772.　Delivered April 15, 1925.

Rehearing denied May 27, 1925.

**1.—Manslaughter—Evidence—Gunshot Wounds—Properly Admitted.**

Where witness has qualified himself as to familiarity with gunshot wounds on a human form, it was not error to permit such witnesses to testify that the wound on the body of deceased entered in the back, and made its egress at a point near the watch pocket. Following Rae v. State, 57 Tex. C. R. 117 and in many other cases decided by this court.

**2.—Same—Evidence—Statements of Deceased's Wife—Properly Excluded.**

Where appellant offered to prove statements made by deceased's wife, made at the scene of the killing some ten minutes after the shooting, such testimony was properly excluded where it was wholly lacking in the essential of shedding light on the transaction under investigation. See Sec. 87, page 56 of Branch's Penal Code.

Appeal from the District Court of Wood County. Tried below before the Hon. J. R. Warren, Judge.

Appeal from a conviction of manslaughter; penalty, three years in the penitentiary.

The opinion states the case.

*A. J. Britton* and *V. B. Harris,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—Appellant was convicted in the district court of Wood county for the offense of manslaughter and his punishment assessed at confinement in the penitentiary for a term of three years.

The State's testimony shows that the deceased went to the place where appellant and his son were cutting wood in some new ground, and the appellant began to abuse the deceased; whereupon the deceased asked appellant's seventeen-year old son what his father was raising all this trouble about, and also asked said youth about some lies that the boy was alleged to have told on the deceased. From this wordy altercation, the State's testimony shows that the

appellant, while deceased was not attempting to harm either appellant or his son, shot the deceased in the back as he was walking off from the scene of the original altercation. The testimony for the State—and on this issue it is undisputed—shows that the deceased was shot about two inches from the backbone and it came out right over his watch pocket. The testimony from the standpoint of appellant showed that the deceased had made threats to run him out of the country and that deceased came to the place where appellant and his son were working, began to abuse appellant's son, and was in the act of striking the boy with a maul at the very instant the appellant fired the shot which killed the deceased.

There are no objections to the charge of the court found in the record, and the only matters of complaint are contained in three bills of exception, the first of which complains of the action of the court in permitting Sheriff A. H. Jolley to testify that he went to the deceased and looked at the corpse and that he thought the cause of his death was a bullet wound, a gunshot wound, and that he thought he knew where the points of entrance and exit of the bullet were, and that he had been working in the sheriff's office sixteen years and had seen lots of pistol wounds on people. Practically the same testimony was admitted over appellant's objection as shown by bill of exception No. 1-A, except that the witness Horton testified that he had had about three or four years experience as a peace officer and had had occasion to see and examine gunshot wounds, and was thereupon permitted, over appellant's objection, to testify that he knew the difference in the point of entrance and the point of exit of a bullet and to state that as a general rule the smaller place is the point of entrance where the ball first enters and it will tear a hole larger on the outside and make it flare where it makes its exit, and further testified that the smooth, round hole on deceased's body was in his back; the bullet went in not far from the backbone, it went in something like an inch or a little more from his backbone and came out in front.

It seems to us that these witnesses had sufficiently qualified as to their knowledge of gunshot wounds to make the testimony complained of admissible. Indeed, this is scarcely an open question at this time. The exact question was decide adversely to appellant's contention in the case of Roe v. State, 55 Tex. C. R. 130 and in Welch v. State, 57 Tex. C. R. 117, and in many other cases decided by this court. In this connection, it may be well to state that there was no testimony offered by any witness disputing the State's testimony that the deceased was shot in the back. Even the appellant himself while a witness on the stand testified: "I just shot at the man and didn't shoot at no certain place. At the time I shot

deceased he had a hammer drawn on my son and was coming over with it. I don't know where Robinson was struck." Steagald v. State, 24 App. 207.

By his bill of exception No. 2 appellant complains of the court's action in refusing to permit appellant to prove by the witness Tom Pugh that he went to the scene of the homicide and that when he got there Mrs. Robinson, the wife of the deceased, was there weeping and crying, and the defendant offered to prove by said witness Tom Pugh as part of the *res gestæ* that the said Mrs. Robinson, wife of deceased, then and there, not over ten minutes after the shooting, exclaimed to her deceased husband, "Oh, why didn't you listen to me, darling? I told you not to come down here this morning. Oh, why didn't you listen to me?"

Under all the authorities, before a statement by a third party can be admitted as a part of the *res gestæ*, in addition to conforming to certain other well known requirements, it must shed light on the main transaction. The statement offered does not more than indicate that deceased's wife had told him not to go to the scene of the killing. If the statement had shown that deceased went to the scene of the homicide to provoke a difficulty or for some other unlawful purpose germane to the case, an entirely different question would be presented. But there is nothing in the excluded statement that shows that deceased went on a hostile mission and to show his wife's reasons for importuning him not to go, and it is therefore wholly lacking in the essential of shedding light on the transaction under investigation. This being true, the court did not err in rejecting it. For a full collation of the authorities on this subject, see Sec. 87, page 56, of Branch's Penal Code.

This disposes of all assignments raised by appellant; and. finding no error in the record requiring a reversal of the case, it is our opinion that the same should be in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING

MORROW, PRESIDING JUDGE.—An examination of the record in the light of the appellant's motion for rehearing leaves us of the opinion that the proper disposition of the appeal was made on the original hearing.

Upon the admissibility of the proffered declarations of the wife of the deceased, the cases of Jackson v. State, 63 Texas Crim. Rep.

358; Wade v. State, 88 Texas Caim. Rep. 375; and McCormick v. State, 52 Texas Crim. Rep. 495 are somewhat analogous. The matter is brought within none of the rules of which we are aware admitting declarations of a third party under the rule of *res gestæ*. The declarations offered were the declarations of the wife as to what she told the deceased. The materiality of the testimony is questionable. How her advice to the deceased not to go, in the absence of some declaration of the deceased, would become relevant is not perceived.

The motion is overruled.

*Overruled.*