STATE of Missouri, Respondent,

v.

Chrissie TRUSTER, Appellant.

No. 47626.

Supreme Court of Missouri,

Division No. 2.

March 14, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied April 11, 1960.

Dillard & Grossenheider, J. W. Grossenheider, Lebanon, for appellant.

John M. Dalton, Atty. Gen., Robert E. Hogan, Sp. Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

Chrissie Truster was sentenced to ten years' imprisonment for the murder in the second degree of Newlin Truster, her husband, Sections 559.020, 559.030 RSMo 1949, V.A.M.S. She contends in her brief that the court erred in failing to sustain her motions for judgment of acquittal at the close of the State's case and at the close of all the evidence; in admitting certain testimony and certain exhibits in evidence, and in the giving of an instruction.

Appellant's position is that the court erred in overruling her motions for judgment of acquittal because, independent of extrajudicial admissions made by appellant and even with said admissions, the State failed to prove the corpus delicti and, in addition, failed to prove appellant's criminal agency. Many cases are cited. Consult Supreme Court Rule 1.08(a) (3), 42 V.A.M.S.

Appellant stresses observations to the following effect: " 'Corpus delicti cannot be said to be established until it has been proved that the death was not self-inflicted, nor due to natural causes or accident. And, although it is not essential to the proof of the corpus delicti that the criminal agency of the accused be shown, yet, in order to convict an accused, it is necessary to prove his (criminal) agency additionally to the corpus delicti.' " State v. Morris, Mo., 307 S.W.2d 667, 673[5], and cases cited. State v. Lyle, 353 Mo. 386, 182 S.W.2d 530, 532 [1, 2] (but see [4]). In appellant's cases of State v. Gordon, 199 Mo. 561, 593, 98 S.W. 39, 48, and State v. Nesenhener, 164 Mo. 461, 470, 65 S.W. 230, 232, we are directed to no admissions on the part of the accused and the court considered there was no sufficient evidence on which to predicate the accused's criminal agency. In State v. Bowman, 294 Mo. 245, 243 S.W. 110, 117[5], aside from the accused's confession there was no evidence that the deceased was dead.

The sufficiency of evidence of the corpus delicti for the admission of extrajudicial admissions is reviewed in State v. McQuinn,

361 Mo. 631, 235 S.W.2d 396[1–5], the court stating in part: "In murder, the corpus delicti consists of two elements: (1) The death of the person alleged to have been murdered, and (2) the criminal agency of someone other than deceased causing the death." The court then mentions that State v. Skibiski, 245 Mo. 459, 463, 150 S.W. 1038, 1039[1], is a leading case. The Skibiski case states: "The rule in this state has long been that full proof of the corpus delicti, independently of the confession, is not required. If there is evidence of corroborating circumstances which tend to prove the corpus delicti and correspond with the circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the corpus delicti is sufficiently proved in a given case. * * * A like, or even more liberal rule prevails in other jurisdictions. * * *" Citations omitted. The McQuinn case also sets forth a quotation to like effect from State v. Morro, 313 Mo. 98, 108, 281 S.W. 720, 722[3], and the following from State v. Thompson, Banc, 333 Mo. 1069, 1080, 64 S.W.2d 277, 282: "* * * [W]hat seemed to be only slight corroborating facts have been held sufficient." See, among others, State v. Arndt, Mo., 143 S.W. 2d 286[3]; State v. Haun, Mo., 324 S.W.2d 679, 681[1]; State v. Francies, Mo., 295 S.W.2d 8, 12[6, 7]; State v. Falbo, Mo., 333 S.W.2d 279.

■ Any error in overruling appellant's motion at the close of the State's case was waived by appellant's introduction of evidence in her own behalf. State v. Archer, Mo., 328 S.W.2d 661, 665[5]; State v. Vincent, Mo., 321 S.W.2d 439, 440[2]; State v. Bigley, Mo., 247 S.W. 169, 171[2].

■ In passing on the sufficiency of the evidence to make a case the probative evidence favorable to the State is taken as true, as are all reasonable inferences to be deduced therefrom, and all evidence and inferences contrary thereto are disregarded. The Archer [3], and Vincent [4] cases, supra; State v. Jones, 363 Mo. 998, 255

S.W.2d 801, 804[2]. It is the duty of a jury to determine the issues under all the evidence and an accused, by putting on evidence, takes the chance of aiding the State's case. The Bigley case, supra; State v. Meadows, 330 Mo. 1020, 51 S.W.2d 1033, 1036[4].

■ Appellant refused to consent to an autopsy when the request was made on the evening of Mr. Truster's death. No autopsy was performed and this has resulted in a considerably greater detail of the facts than otherwise would have been required.

Mr. and Mrs. Truster, at the time of his death, had been married twenty-eight years. Each was forty-nine years old. Three of their six children are living, and two were witnesses for the defense. Mr. and Mrs. Truster, with their daughter, Shirley Ann, who was described as afflicted and incapable of testifying, lived on a farm about four miles west of Hartville in Wright County. Pam Martin, a four year old granddaughter, was visiting them. The Truster back porch faces east, is approximately eighteen inches above the ground, and has two concrete steps to the ground. A hard surfaced walk runs east to a drive. A door leads from the kitchen onto the screened-in porch, which has a screen door with a spring to close it.

Mr. and Mrs. Jess Young lived close enough to talk back and forth with the Trusters. A little after 7:00 a. m. November 12, 1958, Mrs. Young was in her yard and heard a gunshot coming from the direction of the Truster home. She testified she knew the difference between the sound of a shotgun and a rifle and the shot sounded like a "22 gun." In about twenty or thirty minutes appellant came to the house and told her "Newlin had been shot."

Mr. Young accompanied appellant to her home. Appellant told him "Well, I don't think there's any use. I believe he's gone anyway." He didn't notice appellant crying. The Trusters had not finished milking. Mr. Truster was dressed in gray coveralls. He

was lying prone on the ground, face down, with his feet toward the sidewalk and approximately eight feet south of the steps to the porch. He was bleeding from the mouth, and there was a considerable sized spot of blood on the ground and on leather gloves, under his body. An ambulance was called. John Simpson and Warren Simpson, of a funeral home in Hartville, took Mr. Truster to Dr. F. E. Worthy, an osteopathic physician, about 8:00 or 8:15 a. m. who testified Mr. Truster had been dead for at least sixty or seventy-five minutes. The body was taken to the funeral home.

Sheriff James Baker and Coroner Frank Grable of Wright County went to the Truster home after viewing the body at the funeral home, and testified that, in addition to the blood on the ground, there were two or three spots of blood on the porch, and a drop or two on the concrete steps. Sheriff Baker testified that a close inspection of the back porch disclosed no place where a bullet had entered through the screen or screen door.

There were holes and blood on the right sleeve of Mr. Truster's coveralls which matched holes in the biceps of his right arm. There was also a hole, adjacent to his inside right arm wound, slightly forward of the center of the right side of his body, leading into his chest cavity. The wounds were described as very small, about the size of a lead pencil, smooth, round in nature, depressed in, and showed no indication of anything having been pulled from the wounds. John Simpson, the undertaker, probed the wounds with a sixteen to eighteen inch trocar to properly prepare the body, using slightly more than half of the length of the trocar in doing so, and stated the wound extended three to five inches inside the chest cavity and in the direction of the left shoulder blade. There were no other marks or bruises on the body.

Dr. Worthy testified that such a wound would produce death.

A .22 caliber High Standard make revolver, having a six-inch barrel, was iden-tified as appellant's gun, given her by her son, and marked State's Exhibit C. This gun and five live and one empty .22 caliber long range shells, State's Exhibit B, were obtained by Sheriff Baker at the Truster home the night of Mr. Truster's death.

Sheriff Baker testified that State's Exhibit C, the revolver, had a safety and that one had to pull the hammer "way back" before it passed the safety, and it was his opinion it would not "go off accidentally", and if dropped on a concrete porch it would not "jar off" without something touching the trigger.

The testimony of Coroner Grable and Sheriff Baker was that the wound on Mr. Truster's body, arm and chest, had been made by a bullet about the size of a .22 caliber bullet.

A careful examination of Mr. Truster's clothing disclosed no powder burns.

Coroner Grable testified there were no objects or instruments on the porch or ground that would cause the wounds received by Mr. Truster.

Mr. Truster was a healthy, husky man, of a good disposition, not inclined to quarrel. He was right-handed. He was dead within a few seconds or minutes after being shot.

The foregoing was more than sufficient evidence of the corpus delicti for the admission of appellant's extrajudicial statements or confessions in evidence.

Appellant made admissions to Bill Truster, decedent's brother, and his wife at their home that she shot her husband because she didn't want him to go to work that morning. Appellant also made admissions on several occasions to Sheriff Baker, including two occasions when she called at his home. From appellant's statements, aided by her testimony, the jury could find the following facts: Mr. Truster told her while they were in the barn milking that morning that he was going to drive a truck for Junior Arnold that day; that

she did not like for him to do that because they had too much work to do at home; that they had an argument over it; that her husband went to the house first; that she came later; that the argument continued; that she went into the bedroom, got the revolver to bluff him and keep him from driving this truck that she then went into the kitchen, pulled the trigger, didn't intend to hit him but he must have moved, and that he walked out through the porch into the yard and fell.

■ Appellant states the court erred in permitting Coroner Grable and Sheriff Baker to testify that the wound on decedent's body was caused by a .22 caliber bullet, and Dr. Worthy to testify that the chest wound could have caused death, stating such evidence was opinion evidence and the witnesses were not qualified to give such opinions and the doctor did not testify to the cause of decedent's death. Appellant cites the Missouri cases of State v. LaMance, 348 Mo. 484, 154 S.W.2d 110, 118[8, 9], and State v. Ring, 346 Mo. 290, 141 S.W.2d 57, 63.

Witness Grable had been coroner of Wright County for six years and a practicing licensed embalmer for nineteen years. He had seen many bullet wounds, thirty to sixty in one three-year period. He estimated he had assisted at twenty-five autopsies on bodies wounded by bullets, including persons shot with .22 caliber guns. He examined the wound on Mr. Truster's body, described it, and stated, in his opinion, it was made by a bullet about the size of a .22 bullet.

Witness Baker had been sheriff of Wright County for eighteen years. He testified he had had experience with and fired many different types of guns, had seen many persons who had been shot by bullets and had watched autopsies on persons killed by bullets, including persons wounded by .22 and larger caliber bullets. He had examined Mr. Truster's body for wounds and described them. He stated, based on his experience, he could tell a bullet wound, and had no doubt about decedent's wound being made by a bullet, smaller than a lead pencil, the size of a .22 caliber bullet.

Appellant's citations do not establish error. Appellant's Ring case, supra, differs on the facts involved. Weighed by appellant's LaMance case, supra, the coroner and sheriff possessed testimonial qualifications for the stated opinions. See State v. Nieuhaus, 217 Mo. 332, 117 S.W. 73, 79(6); State v. Ivy, Mo., 192 S.W. 737[9]; Thompson v. Chicago, R. I. & P. R. Co., 222 Mo.App. 725, 4 S.W.2d 894[3]. Persons having experience with gunshot wounds may testify with respect to their observations of the wound and give their opinions that it was made by a bullet of a particular caliber. Baugh v. State, 218 Ala. 87, 117 So. 426[9, 10]; Fisher v. State, 100 Tex.Cr. 205, 272 S.W. 465[1]; Landry v. State, 117 Tex.Cr. 396, 35 S.W.2d 433, 436[6–8]; 2 Underhill, Cr.Ev., 12th Ed., § 315, nn. 25, 26, 28; § 316; 2 Wharton, Cr.Ev., 12th Ed., § 545, nn. 12–15; 23 C. J.S. Criminal Law § 868; 20 Am.Jur., Ev., § 871.

Appellant admitted the qualifications of Dr. F. E. Worthy when he was called to the stand and again during the course of his testimony. Dr. Worthy testified he heard the testimony of John Simpson on probing Mr. Truster's wound with a trocar (set forth hereinbefore); that, in answer to a hypothetical question based on Mr. Simpson's said testimony, whatever caused the wound "entering that deep would go through the right lung and possibly either hit the heart or some of the larger blood vessels in and around the heart" and would produce death, although the person might live long enough to walk ten to fifteen steps. The doctor properly testified on cross-examination that he did not know the cause of Mr. Truster's death, as the only examination he made of the body was to determine whether he was dead when it was brought to him by Mr. Simpson about 8:00 a. m. Physicians, admittedly qualified, may answer hypothetical questions as to the cause

of death. State v. Hancock, 340 Mo. 918, 104 S.W.2d 241[11].

Appellant contends the court erred in admitting in evidence each of the State's exhibits—Exhibits A, B, C, D, and E.

We have stated Sheriff Baker's experience in part in connection with the preceding issue. He also testified that he had seen many types of guns fired at night, and that a blaze shoots out six to eight inches from the barrel, which would be about the distance that powder burns would show up on clothes. Later, the sheriff conducted experiments on two pieces of cloth—Exhibit A, a nail apron, and Exhibit D, the sleeve of a coverall. Appellant's revolver, Exhibit C, was used in making the tests.

Appellant says Exhibits A and D were not cloth of similar material to the coveralls worn by Mr. Truster and the appearance of powder burns on said exhibits would not show that powder burns would have been on decedent's coveralls if the revolver had been held a similar distance from deceased when fired, and that the sheriff was not qualified to make such tests.

Exhibits A and D were of denim material, a material used for overalls and coveralls. Mr. Truster's coveralls were medium gray in color. Exhibit A was somewhat dingy but described as lighter in color than decedent's coveralls. Exhibit D was of the same cloth and the same color and stripe as decedent's coveralls, as near the same as decedent's as the sheriff could procure, and was the same "unless there would be some difference in one being laundered more," of which there was no showing.

■ "The distance within which powder burns occur may be testified to by a firearms expert, an undertaker familiar with wounds caused by firearms, or other witnesses possessing expert knowledge of the subject". 23 C.J.S. Criminal Law § 868, p. 84. See 20 Am.Jur., Ev., 627, §§ 755–762; Annotations, 8 A.L.R. 41; 85 ⸱ A.L.R. 492; Pollock v. State, 136 Wis. 136,

116 N.W. 851, 854(3); Hughes v. State, 126 Tenn. 40, 148 S.W. 543, 556[26], 29 Ann. Cas.1913D, 1262, 1276; 2 Underhill, Cr. Ev., 12th Ed., § 316, n. 56; 2 Wharton, Cr.Ev., 12th Ed., §§ 542, nn. 2–4, 543. Missouri courts have considered that the absence of powder burns on the body from a shotgun wound indicated that the parties must have been a few feet apart (State v. Miller, Mo., 204 S.W. 6, loc. cit. 7, 8) and that a .45 caliber revolver would produce flame that would scorch and burn at a foot or so (Bear v. Sovereign Camp, W.O.W., 207 Mo.App. 82, 230 S.W. 369, loc. cit. 370, 371). Experimental evidence is not forbidden by Missouri courts. State v. Foster, 355 Mo. 577, 197 S.W.2d 313, 325[26, 27]. The question of the qualifications of the sheriff was for the court and we find no abuse of discretion as to any ruling with respect to his competency. State v. Daly, 210 Mo. 664, 676, 109 S.W. 53, 56. We are also of opinion Exhibit D was clearly admissible and no prejudicial error resulted from the admission of Exhibit A, which the record indicates was not shown to the jury and was lighter in color and should show powder burns more readily.

■ Appellant's cases of State v. Allison, 330 Mo. 773, 51 S.W.2d 51, 54(II), 85 A.L.R. 471, and State v. Bass, 251 Mo. 107, 157 S.W. 782, 785[2, 3] (decided by Division II and not by Banc, as reported—see State v. Matticker, Mo., 22 S.W.2d 647, loc. cit. 648[3]—and followed in the Allison case) recognize that persons possessing the necessary qualifications may testify to the results of experiments made out of court "under conditions * * * as nearly similar as possible to those in the concrete case." [330 Mo. 773, 51 S.W.2d 54.] These cases are distinguishable in that, among other things, the experiments in the Allison case were made by persons not experts, and in the Bass case some witnesses giving experimental evidence were not competent witnesses and the reasonable similarity of the conditions involved was not established.

■ Appellant says Exhibit B, the empty and loaded .22 caliber cartridges, and Exhibit C, the .22 caliber revolver, were inadmissible because no sufficient connection was shown between these exhibits and decedent's death. This contention ignores the testimony these exhibits were the property of appellant, were shown to the sheriff and obtained by him from her, and appellant's admissions that she shot her husband.

■ Appellant's complaint against Exhibit E (a letter) in her motion for new trial was that it was irrelevant, incompetent and immaterial and did not tend to prove or disprove any issue in the case, and was in the nature of a statement by appellant which was inadmissible because the State failed to prove the corpus delicti. Said exhibit, under date of September 9, 1958, asked the addressee, "Edd," to recommend appellant as a cook and housekeeper for a job in Kansas, but to conceal this from her husband. We have heretofore held that the State made a submissible case. The letter was not erroneously prejudicial if it did not tend to prove or disprove any issue in the case. The assignment is without merit. The exhibit was not too remote, as contended in appellant's brief, and was competent on the issue of motive. State v. Holland, 354 Mo. 527, 189 S.W. 2d 989, 991[1–4].

■ Appellant contends the court erred in giving the instruction cautioning the jury not to consider any statements or admissions or confessions of appellant unless they found the same to have been voluntarily made "because [the statements being extrajudicial] it failed to advise the jury that until they found a murder had been committed by someone, the admissions, confessions or statements of the defendant could not be considered." Counsel state the only authority they can present is the dissenting opinion in State v. Brooks, 92

Mo. 542, 586, 592, 595, 598, 601, 5 S.W. 257, 270, 272, 274, 275, 330, a four to one decision. It is the province of the court to determine the admissibility and substantiveness of the evidence to submit the issue of the corpus delicti and the province of the jury to pass on the weight of that evidence and the credibility of the witnesses. See, for instance, State v. Bennett, Mo., 87 S.W.2d 159, 161[3]. The requirement to find appellant guilty from the evidence, beyond a reasonable doubt, would appear to cover the law involved unless the jury encroach upon the province of the court to pass upon the admissibility of the evidence. We find no Missouri case following the law announced on this issue in the dissenting opinion in the Brooks case. When asked if they had any instructions they desired to be given, appellant's counsel answered that they did not. An instruction on the voluntariness of admissions or confessions of an accused involves a collateral matter and is not part of the law of the case. State v. Gibilterra, 342 Mo. 577, 116 S.W.2d 88, 94[24, 25]; State v. Francies, Mo., 295 S.W.2d 8, 15[24, 25]; State v. Sanders, Mo., 4 S.W.2d 813, 816[10]. The given instruction on appellant's statements was applicable to the facts of record. We find no error.

The matters of record we are required to consider are in proper form and sufficient.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

LEEDY, P. J., EAGER and STORCKMAN, JJ., and JAMES W. BROADDUS, Special Judge, concur.