Sula LYNCH, Respondent,

v.

RAILWAY MAIL ASSOCIATION (United Federation of Postal Clerks Benefit Association) a Corporation, Appellant.

No. 23908.

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1964.

D. D. Bonewits, William M. Day, Kansas City, for appellant.

Allan R. Browne, Ennis, Browne & Martin, Kansas City, for respondent.

PER CURIAM.

This is an action upon an accident insurance policy. Plaintiff recovered a verdict and judgment for the face amount of the certificate, $5,000, together with interest thereon. Defendant appealed.

On October 22, 1927, appellant issued to William Boyd Lynch, a postal employee of the Railway Mail Service, the policy sued on. Plaintiff, Sula Lynch, insured's wife, was the named beneficiary. The policy provided that no benefit would be paid "where death * * * results from voluntarily inflicted injuries * * *." Insured was found dead in Room 702, Plaza Hotel, in Kansas City, Missouri, on March 23, 1958. Appellant's defense was that insured committed suicide.

In the early morning of March 23, 1958, insured together with a fellow employee, Paul Armbruster, was at work in a mail car on the Missouri Pacific Railroad. Their run was from St. Louis to Kansas City. Armbruster testified that insured, whom he called "Joe" was required to carry a revolver "because he had a register run." This revolver was a 38 stub-nosed Colt, and was carried in a hip holster. The two arrived in Kansas City about 7:00 a. m. and went to the Plaza Hotel; that it was their custom to request the clerk in charge of the hotel office to call them at 6:30 p m

Armbruster testified: "I was sitting in the hotel lobby about 7:00 in the evening and I heard the clerk talking to bellboys that he couldn't raise Joe. Two colored boys and I went to Room 702. The door was ajar, possibly three inches and we went in. I saw Joe crossways across a single bed. There were two beds. He was on the one nearest the door crossways on his back with his head over the edge and his feet were on the floor on the opposite side of the bed, at right angles to the length of the bed. I saw a wound in the right side of his head, halfway between the eye and the ear in the hairline. The left side of his head was quite bloody and there was a pool of blood on the floor under his head. He was dressed in shorts and T shirt. The revolver was between his legs." Armbruster remained in the room until the police came. He was asked to leave the room while the police took pictures.

The evidence showed that the bullet had entered insured's right temple and came out behind his left ear. All of the witnesses agree that the revolver had no safety; that there were no powder burns, and that no note was found.

Several witnesses described insured as a "genial" person, "easy to get along with; a happy person; jolly and never morose or depressed." Mr. Armbruster said that the night before insured's death "was just an ordinary night, nothing unusual happened;" that insured "was always telling a joke or wisecracking."

Respondent testified that she married insured in 1924; that it had been a happy marriage; that their financial condition was normal; all of the children were raised and away from home except a daughter; that they had ten grandchildren, were a happy family, enjoyed their home life and the daughter was expecting to be married; that the children returned home and had a reunion every summer; that insured looked forward to the children coming home, and they were expecting them to come that summer and had planned trips and cook-outs; that her husband was not a church-goer; but he believed in the Bible, lived by the Bible and taught his children the Bible; that he loved his job, and had been a regular worker since 1933; that he slept with the pistol under his pillow at home; that she knew of no reason why he would want to take his own life.

■ We will first consider appellant's last point—that respondent failed to make a submissible case. If it is well taken then, of course, there will be no need to discuss appellant's remaining contentions.

The law pertaining to the instant case is free from doubt. As stated in the case of Mayhew v. Travelers' Protection Ass'n of America, 52 S.W.2d 29, 32, Mo.App.:

"It is well-settled law that in an action on an accident insurance contract, such as is in suit here, the burden is on the plaintiff to show that the death of the insured resulted from an accident. But by showing that the cause of death was violent, the plaintiff establishes *prima facie* that the death was accidental."

In the fairly recent case of Edwards v. Business Men's Assur. Co. of America, 350 Mo. 666, 168 S.W.2d 82, our Supreme Court reviews many cases and says:

"It is well settled in this state that, where the evidence is wholly circumstantial, suicide cannot be declared * * * as a matter of law, unless such circumstances exclude every reasonable hypothesis except suicide."

The plain truth is that the undisputed evidence in the instant case completely excluded every conceivable reason for *intentional* or *voluntary* self-destruction. What was the evidence? There was no suicide note, nor were there any threats of suicide. There was no powder burn, and common knowledge tells us that one *intending* to shoot himself would likely place the weapon near or against his person. The undisputed evidence was that a gun held close to the temple and fired would produce powder burns. The deceased had left a call to be

aroused from his sleep so that he could go to work. He was happily married. He owed no money except current bills. He had beloved children and grandchildren, with whom he was anticipating a visit soon. He was not sick. He had no extra-marital affairs. He was a steady worker with a good job. He was jolly, fun-loving, a good joker, and not morose or depressed. He had good friends and fellow workers. He had an interest in the future. He was religious and taught his children that it was a sin to commit suicide.

In the Edwards case, supra, the insured said before he died that he had shot himself. The wound had powder burns. The insured had taken a revolver to the bathroom and locked himself in. He had suffered from impaired vision, hearing loss, nervousness, extreme pain requiring sedatives. His mouth had been eaten away by cancer. In addition to his physical afflictions the insured had become involved in financial reverses and there was an indictment pending against him. Yet the Supreme Court held that a case was made upon the basis of an accident.

In the case of Gilpin v. Aetna Life Ins. Co., 234 Mo.App. 566, 132 S.W.2d 686, there were many factors in the evidence, any one of which might be considered to have impelled a person voluntarily to take his life. The deceased had venereal disease. He had been off work for a period. He had been indulging in extra-marital affairs. He was a spendthrift. He said he could only pay his debts by death. He was at an isolated place, had only bought three gallons of gas, and had powder burns. Notwithstanding those facts this court held that plaintiff made a submissible case for the jury.

The case of Bear v. Sovereign Camp, W. O. W., 207 Mo.App. 82, 230 S.W. 369, was also by this court. In that case there was strong evidence pointing to death by suicide. Yet this court held the question was one for the triers of the fact. So in the instant case (the evidence being wholly cir-

cumstantial) we hold that the question of whether or not insured came to his death by reason of an accident was for the jury to determine.

Appellant contends that it was error to admit into evidence Exhibits 5 and 6, which were photographs of decedent and his family taken in the fall of 1957. Respondent says these photographs were merely cumulative evidence of happy family life and were properly admitted on the important issue of lack of motive for the deceased voluntarily to inflict fatal injuries upon himself. The determination of the relevancy and materiality of a photograph in the first instance is left to the sound discretion of the trial judge and his ruling in that regard will not be held error on appeal unless that discretion has been abused. State ex rel. State Highway Commission v. Cone, 338 S.W.2d 22, 27, Mo.Sup.; Hutchison v. Moerschel Products Co., 234 Mo.App. 518, 133 S.W.2d 701, 706. We find no reason to convict the lower court for an abuse of discretion in admitting the exhibits.

Appellant also contends that the court erred in admitting into evidence respondent's Exhibits in the nature of tests showing powder burns from shots fired at various distances. In the first place, the evidence was merely cumulative of undisputed evidence, not objected to by appellant, from the deputy coroner, that there would be powder burns if the gun had been held directly against the temple and fired. The witness testified that the gun was similar, that the test was made in-doors where there were no air currents, that the revolver was first held as if against a temple, by being placed against a flesh-colored cardboard, and then the weapon was withdrawn in successive distances of six inches and discharged to determine the powder marks at each distance. In the case of Lynch v. Missouri-Kansas-Tex. R. Co., 333 Mo. 89, 61 S.W.2d 918, 921, it was said:

"The appellate courts have quite uniformily maintained a very common-

sense attitude with regard to the admission or rejection of experimental evidence in the court below. Admission of evidence of experiments, or permitting them to be performed in court, is a matter peculiarly within the discretion of the trial judge. His discretion in this regard should not be interfered with on appeal unless it is manifest that it has been abused. One reason for the rule leaving the admission or rejection of experimental evidence to the discretion of the trial court is that such a court is in a better position than the appellate court to judge of the similarity of conditions. But a much stronger reason is that the trial judge should not be hampered by arbitrary rules which, if drawn in detail as to this class of evidence, would obviously be so technical as to be difficult of application and productive of appeals."

We rule the contention against appellant.

■ Appellant also asserts that the court was in error in giving Instruction No. 2 at plaintiff's request. The instruction told the jury that in considering whether insured "voluntarily inflicted such a wound, if so, you may not indulge in surmise, guesswork or speculation outside of and beyond substantial evidence, and the reasonable inferences directly deducible therefrom, and you may further take into account the common knowledge that normal human beings love life and shrink from death."

The instruction did not, as appellant asserts, "refer to and employ the presumption against intentional suicide because of love of life by humans, a presumption which is not in this case." It did refer to "the common knowledge that normal human beings love life and shrink from death" as an *evidentiary fact*. In the Gilpin case, supra, one of the leading cases in this state on this type of accidental death, this court held that even where the facts are consistent with either an accident or suicide the common knowledge of love of life acts *"as an evidentiary fact"*. There was no submission, therefore, as to presumption, but only as to this *evidentiary fact of common knowledge*.

In the well considered case of Parker v. Aetna Life Ins. Co., 289 Mo. 42, 232 S.W. 708, 709, 716, our Supreme Court said: "[W]e have no doubt that it would be entirely proper * * * for the jury to consider in reaching their verdict, that the love of life is the strongest instinct of a human being, and no man ought to be presumed to commit suicide."

In any event we fail to see how appellant, under the facts in this case, was prejudiced. Appellant presented absolutely no evidence supporting its defense of suicide—nothing but surmise and speculation. And we are admonished by the statute (Section 512.160) not to reverse any judgment unless we believe that error was committed by the trial court materially affecting the merits of the action.

■ Appellant also contends that respondent made such admissions in furnishing her proof of loss as to preclude her right to recover. Appellant refers to the certificate of death and statement of the Coroner and says that both state that insured came to his death "apparently by suicide." There is no such statement in either. The question relating to suicide was marked with a question mark. In any event, the question called for a mere "conclusion" and not the statement of a "fact." Callahan v. Connecticut General Life Ins. Co., 357 Mo. 187, 207 S.W.2d 279, 287; Schmidt v. Supreme Council of Royal Arcanum, 207 S.W. 874, 877, Mo.App. There is no statement in the entire transcript emanating from respondent that the insured came to his death from *voluntarily* or *intentionally* self-inflicted injuries.

Finding no error in the transcript prejudicial to appellant, the judgment is affirmed.